JULIA A. M. SHORT *vs.* J. MERRILL CURRIER & another.

Essex.    November 7, 1890. — January 17, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Equity — Mistake — Fraudulent Concealment.*

A woman bought a mortgage, and a creditor of the mortgagor thereupon caused an attachment to be placed upon the land, and took to her at the mortgagee's request an assignment of the mortgage, and urged her to pay his claim. Upon her refusal to do so, he went away, but the same evening, after the attachment was recorded, came back for a fee for the making of the assignment. She refused to pay the fee, but asked him to bring her instead of the assignment a discharge, which she said she was to have. He then carried back the assignment, and later in the same evening procured a discharge and brought it to her the next morning. He did not disclose the attachment at either interview, neither did he hold himself out as her friend or adviser, or in any way attempt to influence her, and she was uninfluenced by him in what she did. *Held*, that in equity the attachment could not be allowed to prevail over the mortgage.

BILL IN EQUITY, filed in the Superior Court, to establish two mortgages held by the plaintiff upon a parcel of land in Methuen, as against an attachment placed thereon by the defendants. After the former decision, reported 150 Mass. 372, the case was sent to a master, and, after the coming in of his report, was heard by *Dewey*, J., who ordered a decree for the plaintiff; and the defendants appealed to this court.

*C. U. Bell*, for the plaintiff.

*W. L. Thompson*, for the defendants.

BY THE COURT. The subjoined opinion was prepared by Mr. Justice DEVENS, and was adopted as the opinion of the court after his death by the Justices who sat with him at the argument.

The plaintiff, for the purpose of providing a home for a sister, the wife of one Pearl, paid $2,000 for two mortgages held by one Wells on the estate of Pearl, of whom the defendants, who constituted a partnership, were creditors. Learning of this purchase by the plaintiff, the defendant Currier, who acted throughout the transaction on behalf of his firm, ordered, on the morning of November 9, 1887, suit to be brought on his claim against Pearl, and an attachment to be made of the real estate here in question. This attachment was recorded at forty minutes before four o'clock in the afternoon of that day. Acting at Wells's request, Currier took assignments of the mortgages from Wells to the plaintiff at about half past two o'clock on the same afternoon, and delivered them to her. He then informed her of his claim against Pearl, and urged her to pay it, which she declined, but he made no mention of the attachment he had ordered. He returned in the evening between five and six o'clock to get two dollars, the fee for making the assignments to her. This she refused to pay, saying that she was to have discharges of the mortgages, and requested him to return the assignments and bring her such discharges. Currier agreed to do this, and carried the assignments to Wells, by whom the mortgages were discharged later on the same evening. The discharges were brought to the plaintiff by Currier the next morning. At the second interview, Currier did not disclose the fact of the attachment made by him. But while this is so, it is found by the master, to whom the case was referred, that Currier did not in any way or manner hold himself out to the plaintiff as her friend and adviser, or attempt to influence her to have discharges instead of assignments of the mortgages; and that whatever she did in this regard, she did uninfluenced by Currier. Currier therefore stood by while the plaintiff acted under the misapprehension that the discharge of the mortgages would give her a good title to the premises, and in ignorance of an act done by him, which, unless she can be relieved from the consequences of her mistake of fact, will postpone her rights in the premises to the claim of the defendants. Currier has in no way parted with anything, nor will he lose anything to which he is fairly entitled if he does not maintain the preference for his attachment, which he now claims, while the plaintiff must to that extent be injured.

Many cases in other States have gone very far in holding that, even after a discharge of a mortgage, a court of equity will keep it alive, and treat the transaction as an assignment, when necessary for the protection of the just rights of parties. *Barnes* v. *Mott*, 64 N. Y. 397. *Everson* v. *McMullen*, 113 N. Y. 293. *Cobb* v. *Dyer*, 69 Maine, 494. *Kinsley* v. *Davis*, 74 Maine, 498. *Banta* v. *Vreeland*, 2 McCarter, 103. *Coudert* v. *Coudert*, 16 Stew. 407. *Hammond* v. *Barker*, 61 N. H. 53. We shall not now have occasion to examine them, or determine how far we should be willing to follow them. It has been held in Massachusetts, that where, by mistake, discharges have been taken instead of assignments of mortgages, and no intervening rights are affected, it was competent for the court to direct such discharges to be cancelled and the assignments substituted. *Bruce* v. *Bonney*, 12 Gray, 107. *Willcox* v. *Foster*, 132 Mass. 320. In those cases one paper was accepted instead of another, which the recipient supposed he was obtaining, while in the case at bar the mistake was not as to the character of the paper, but as to the existence of the facts on which its value depended. Had there been a mistake of law as to the legal effect of the instruments she accepted, it might not have been possible to correct the error; but when she accepted the discharges, which she would not otherwise have accepted, by the reason that facts are concealed from her, and that she thus misunderstands her position, it would certainly be unjust that the party who knew of her ignorance, and of the mistake of fact under which she was acting, should be able to avail himself of it in obtaining a preference for his own claim. Even if he was not the plaintiff's adviser and did not act as such, and if she took her course uninfluenced by him, his silence as to the attachment, while he pressed her for the payment of his claim, directly tended to leave her in a delusion as to the title of the property under which he must have been conscious she was acting. Whatever might be the rights of a party who knew nothing of the plaintiff's mistake, Currier should not be able thus to establish an intervening right upon the property.

*Decree affirmed.*