### NORTH EASTON CO-OPERATIVE BANK *vs.* CHARLES MacLEAN & others.

Plymouth. February 8, 1938. — May 25, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Mortgage,* Of real estate: priority, discharge, election to enforce, coöperative bank mortgage. *Election. Equity Jurisdiction,* Mistake. *Equity Pleading and Practice,* Decree, Parties, Waiver, Appeal. *Coöperative Bank. Pledge.*

Mistake of a coöperative bank, holder of a first mortgage in the coöperative bank form accompanied by a pledge of the mortgagor's shares also assigned to a second mortgagee subject to such pledge, in refinancing its loan in ignorance of the existence of the second recorded mortgage by discharging its mortgage and cancelling the shares and taking a new mortgage with a pledge of new shares, entitled it in equity to a decree voiding the discharge, reinstating its original mortgage as a first lien on the real estate in the original sum less the total amount paid on both the old and the new shares and ordering it to discharge its new mortgage, where it did not appear that such relief would prejudice other lienors.

A coöperative bank which by mistake had discharged a mortgage and taken a new one in ignorance of a second mortgage could not be said as matter of law to have elected to rely solely on its new mortgage by reason of the fact that, after it learned of its mistake, it entered upon the real estate for breach of conditions of the new mortgage and made certain other arrangements pending adjustments of conflicting claims of lienors.

Whether a second mortgagee participated in or consented to or even knew of a transaction whereby the first mortgage was discharged and replaced by a new one, was immaterial on the question whether the first mortgagee was entitled in equity on the ground of mistake to be restored to his original position of priority over the second mortgagee.

A final decree for the plaintiff in equity was not to be reversed for nonjoinder of a party defendant where that question was not properly raised in the trial court and no prejudice resulted to the defendants by the nonjoinder.

Relief warranted by allegations in a bill in equity which were supported by the evidence was proper though not in the form sought in the prayers.

On the record, an amount fixed by a decree in equity as due on a mortgage must be assumed to have been computed by the judge and counsel together and must stand, evidence respecting such computations not being reported.

In a suit in equity by one who had been a first mortgagee, seeking to be restored to that position on the ground that a discharge of his mortgage and his taking a new one subordinate of record to a second mortgage was by mistake, it was improper to grant injunctive relief against one interested in the real estate solely under a mortgage subordinate to all the others, as he had no interest adverse to the plaintiff.

BILL IN EQUITY, filed in the Superior Court on April 9, 1937.

The suit was heard by *Dillon*, J.

*Ethelbert V. Grabill*, (*Elliott V. Grabill* with him,) for the defendants Trustees for Randolph Associates and another.

*H. K. Stone*, (*J. Sugarman* with him,) for the plaintiff.

DOLAN, J.    This is a bill in equity in which the plaintiff prays that the defendant trustees, under an indenture of trust for the Randolph Associates, be ordered to discharge their mortgage from the defendant MacLean on certain real estate in the town of Easton, and to receive in place thereof a second mortgage on the same premises "junior to the mortgage of" the plaintiff, and for such further and other relief as may seem just and meet in the premises.

The defendant Julia F. Lynch filed a disclaimer of interest and prayed that the bill be dismissed as to her, with costs. The defendant trustees before referred to, the defendant Randolph Trust Company and the defendant Edward B. Hayward appeared and answered. The bill was taken as confessed against the defendant MacLean. After hearing a final decree was entered on June 24, 1937, "That the mortgage given by the Respondent Charles MacLean to the North Easton Co-operative Bank, dated August 3rd, 1928, and recorded with Bristol County Northern District Registry of Deeds in book 786, page 178, was discharged by mistake, and the discharge of said mortgage, which is dated May 19th, 1930, and recorded with Bristol County Northern District Registry of Deeds in Book 799, page 567, is hereby declared to be null and void, and said mortgage is hereby declared to be a first mortgage upon the premises therein described and to be in full force and effect in the principal sum of $5566.50, instead of the sum of $8,000. for which the same was originally written; and in all other respects, said mortgage lien and the note which was given to secure it [*sic*], are hereby declared to be in full force and effect and are restored as if the said discharge, dated May 19th, 1930, had never been executed and recorded; and all parties defendant are restrained and enjoined from doing or performing any acts which will interfere with the petitioner in the exercising of the rights of the petitioner in and to the premises described in said mortgage, as the holders of a first mortgage lien upon said premises." The decree also contained appropriate provisions for giving effect to the reinstatement of the plaintiff's mortgage of 1928.* The trustees for the Randolph Associates and the Randolph Trust Company appealed.

On June 24, 1937 (about a month after the trial had closed and the judge had announced his decision, but before the entry of final decree) the defendant trustees and the defendant trust company filed motions to amend their

---

* Among other provisions of the decree was an order that the plaintiff discharge the mortgage given it by MacLean dated May 15, 1930. — RE-PORTER.

answers, by alleging laches as a bar to the relief sought by the plaintiff. The motions were denied and an appeal was taken in each instance.

The judge did not make any report of material facts, but the evidence is reported and tends to show the following facts. On August 2, 1928, the plaintiff granted a loan of $8,000 to the defendant MacLean, to secure the payment of which he gave a first mortgage of certain real estate located in the town of Easton. As further security for the repayment of the loan MacLean pledged forty shares of the seventy-ninth series issued by the plaintiff. The mortgage deed was duly recorded. The plaintiff is authorized by law to take only first liens upon real estate as security for its mortgage notes. G. L. c. 170, § 23. (See now G. L. c. 170, as it appears in St. 1933, c. 144.) On January 17, 1930, MacLean, having paid in about $900 on his shares and being desirous of raising some money to pay for additions already made or to be made to the real estate involved, applied to the plaintiff for a "new loan" of $8,000. Action on this application was postponed until the May series of shares of the capital stock of the plaintiff would be issued so that MacLean could have the benefit of dividend additions. On January 23, 1930, MacLean made application to the defendant trustees for Randolph Associates for a loan to be secured by a mortgage of the same real estate. The application contains the following statement: "First mortgage of $8000. held by the North Coop. Bank — dated April 1, 1928 for — years. Just voted new reloan to take effect Apr. 1, 1930." On February 14, 1930, the loan from the defendant trustees was consummated, and to secure the same MacLean gave them a second mortgage on the premises, the rate of interest on which was eight per cent. The mortgage deed recited that "This mortgage is subject to a prior mortgage upon which $7,133.60 of principal remains unpaid, given by Charles MacLean to North Easton Co-operative Bank dated August 3, 1928, and recorded with Bristol Registry of Deeds, Book 786, page 178." As further security for the payment of the loan MacLean assigned to the defendant trustees the forty shares in the seventy-ninth

series of the plaintiff bank "subject, however, to the rights of said Bank in them on account of their being pledged to secure the loan to [*sic*] said bank herein above mentioned." The mortgage note was indorsed by the E. C. Young Company by Martin E. Young as surety. That company had built the addition to the premises for MacLean and the loan was raised partly to pay for the same. Martin E. Young "ran the business . . . ." Young is one of the defendant trustees and was such trustee at the time this loan was made.

MacLean did not inform the plaintiff of this transaction, and on May 15, 1930, its title examiner, the defendant Hayward, certified to it that the new mortgage to be given by MacLean would be a first lien on the property. This loan of $8,000 was made; the plaintiff discharged its 1928 mortgage and took from MacLean a new mortgage of the premises which was executed under date of May 15, 1930, but acknowledged by MacLean on May 19, 1930, and which was duly recorded. Thus the mortgage to the defendant trustees became first of record. At the time of the execution of the 1930 mortgage to the plaintiff, the latter paid $8,000 to MacLean in the following manner: in satisfaction of taxes on the premises $152.87, E. C. Young Company on account of work and materials in erecting the addition to the premises $836.13 by order of MacLean, and the balance in satisfaction of the amount due from MacLean to the plaintiff on its 1928 mortgage. Thus MacLean received the value of the shares pledged by him in connection with that mortgage, the major portion of which was paid to the E. C. Young Company with which the defendant trustee Young was connected. The 1930 mortgage deed did not contain any reference to the mortgage to the defendant trustees; Young, whose company accepted part of the proceeds of the transaction, did not advise the plaintiff of the existence of the mortgage running to his trust, and the plaintiff had no knowledge of its existence. Its title examiner, the defendant Hayward, had failed to discover it in his examination of the title. Under the terms of the 1930 mortgage to the plaintiff, MacLean as-

signed forty shares of the eighty-third series of the plaintiff's capital stock as further security for the payment of the loan. The shares in series seventy-nine pledged as collateral security for the repayment of the former loan by the plaintiff were cancelled. On December 5, 1933, Mac-Lean procured from the defendant Randolph Trust Company a loan of $2,000, giving as security for the payment thereof a third mortgage on the same property, which was recorded on December 7, 1933. The rate of interest on the loan was eight per cent per annum. The defendant trustees had offices in the same building as the defendant Randolph Trust Company and some of the trustees were directors of the latter company.

On August 25, 1934, MacLean conveyed his equity in the mortgaged premises to the Kenco Restaurants, Inc. In April, 1935, the plaintiff learned for the first time that the mortgage given to it by MacLean on May 19, 1930, was subordinate of record to the mortgage given by Mac-Lean to the defendant trustees. The plaintiff and its attorneys then held some conferences with the defendant trustees and officers of the defendant Randolph Trust Company, at which it was agreed that, pending adjustment of the plaintiff's mortgage, the plaintiff and the trust company should make entries under their respective mortgages and that the trust company should foreclose its mortgage; and accordingly the trust company made entry on June 10, 1935, and the plaintiff on July 9, 1935. In pursuance of this agreement the Randolph Trust Company foreclosed its mortgage by sale, at which it purchased the property on June 9, 1936. It was also agreed by the parties that the rate of interest on the several loans would be treated as if at the rate of five per cent, and that the income from the property should be collected from the tenant, the defendant Julia F. Lynch, by one Leahy, the treasurer of the "Randolph Associates," as agent for all concerned. All these arrangements were made pending the adjustment of the various claims of the parties. The plaintiff, the defendant trustees, and the officers of the defendant trust company were friendly and co-operative and everything

that was done was by agreement, and there was no change in the relation of the parties until December 31, 1936, when the defendant trust company conveyed the property to the defendant Lynch for $100, subject to the two mortgages of record, without the knowledge or consent of the plaintiff. The bank commissioner was insisting that the plaintiff take steps to reinstate its mortgage as a first lien as required by the statute and the plaintiff brought this suit on April 9, 1937.

In these circumstances we think the defendant trustees' contention, that the plaintiff must be held to have elected to rely upon its 1930 mortgage, cannot be sustained, and that the plaintiff's conduct throughout is not susceptible of being interpreted as an election to resign itself to second place in the order of liens on the premises. Nothing was done that was effective to change the status of the parties, by the plaintiff or the defendant trustees. The case at bar is distinguishable from such cases as *Childs* v. *Stoddard*, 130 Mass. 110, 112, and *Houle* v. *Vallieres*, 281 Mass. 123, 125, upon the doctrine of which the defendant trustees rely. In those cases the mortgagees not only entered under their new mortgages but foreclosed by sale and brought suit against the mortgagors.

The defendant trustees and the defendant trust company have argued that there is no evidence which would warrant a finding of "participation, consent, connivance or conspiracy" on their part in connection with the transactions between the plaintiff and MacLean. While it is true that no such findings are warranted as to the defendant trust company, and that no finding is warranted that the defendant trustees participated in or connived at or entered into any conspiracy in relation to the subject matter or actually consented to the discharge of the 1928 mortgage and the acceptance of the 1930 mortgage by the plaintiff, the judge could find that the defendant trustees had knowledge of the contemplated refinancing of MacLean's loan from the plaintiff, and that they sat by and did nothing. See *Short* v. *Currier*, 153 Mass. 182, 184. Such a finding, however, is not necessary to support the result, but if it

were, the decree imports it.  *Milne* v. *Walsh*, 285 Mass. 151, 153.  *Moore* v. *Northampton Co-operative Bank*, 288 Mass. 317.  The same result as that reached in the court below would have followed in the absence of any knowledge on the part of the defendant trustees relative to the conditions under which the plaintiff discharged its mortgage of 1928.

It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected.  See *Bruce* v. *Bonney*, 12 Gray, 107, 113; *Willcox* v. *Foster*, 132 Mass. 320, 322, 323; *Short* v. *Currier*, 153 Mass. 182, 184.  In appropriate circumstances relief has been given simply by decreeing priority to the new mortgage in proper amount and by injunctive orders.  See *Worcester North Savings Institution* v. *Farwell*, 292 Mass. 568, 575; *Home Owners' Loan Corp.* v. *Baker*, 299 Mass. 158, 162.  It cannot be said as a matter of law that the omission of one "to avail himself of the opportunity afforded him by the public records to become informed of . . . [a] mortgage constituted such culpable neglect as to cut him off from the relief he seeks, to which, upon the substantial merits of the case, he apparently is entitled."  *Merchants & Mechanics Bank* v. *Tillman*, 106 Ga. 55, 61.  See also *Home Owners' Loan Corp.* v. *Baker*, 299 Mass. 158, 161.  The finding in the decree that the plaintiff's mortgage of 1928 was discharged by mistake is fully warranted by the evidence.

While the shares pledged as additional security for the payment of the plaintiff's loan of 1928 and also, subject to the latter's rights, as additional security for the payment of MacLean's loan from the defendant trustees, were cancelled upon the discharge of the plaintiff's mortgage of 1928, we do not think that the defendant trustees' contention, that they are prejudicially affected by the reinstatement of the 1928 mortgage because they have lost the benefit of the additional security of the value of those shares, can be sustained.  Under the provisions of G. L.

c. 170, payment on the shares pledged as additional security for a loan secured by a coöperative bank mortgage must be considered as increasing their value and not as being partial repayments of the loans. (But see now St. 1937, c. 233, which is not applicable to the case at bar.) While under the provisions of G. L. c. 170, § 24, when the shares of a borrowing shareholder reach maturity, they shall be cancelled and the loan discharged, and before such time the borrower may have the value of the shares credited to the loan (§§ 29, 32), yet, under other sections, the shares appear to be treated as collateral security rather than as merely a method of paying the loan (§§ 26, 27 as amended) and the borrower may pay his loan without claiming credit for his shares and thus retain the shares and his membership (§ 29) and his right to share in the distribution of profits (§ 40). But as MacLean did not continue to make his payments to the plaintiff the latter would have the right to credit the value of the shares on the loan under § 32. *Lowell Co-operative Bank* v. *Dafis,* 276 Mass. 3. The only right acquired by the defendant trustees in the shares issued in connection with the 1928 loan, made by the plaintiff to MacLean, was to that margin of value which the shares would have over and above the debt which he owed the plaintiff. An examination of the record establishes by clear inference if not by direct evidence that, in fixing the amount in which the judge decreed that the plaintiff's mortgage of 1928 should be reinstated, he deducted from its face value of $8,000 all that had been paid by MacLean on the shares pledged in connection with that mortgage, as well as all that he had paid on the shares pledged in connection with the plaintiff's mortgage of 1930. As MacLean had for some time past been in default in his payments to the plaintiff, and the defendant trustees have been benefited to the extent of the value of the shares of both series, they are in no worse position than had the 1928 mortgage not been discharged and MacLean been in default in his payments on account of the loan secured thereby. Their rights to the value of the shares pledged for payment of the 1928 mortgage were

subject to the rights of the plaintiff. They have suffered no loss by the application of their value, as well as that of the new shares, to the reduction of the plaintiff's lien, but are fully compensated by the corresponding decrease in the amount of the plaintiff's lien decreed in the court below to be superior to theirs.

The contention of the defendant trustees that the E. C. Young Company, as indorser upon the mortgage note given them by MacLean, should have been joined as a party cannot be sustained as a reason for reversing the decree. That question was not raised in the court below in the proper mode by demurrer, plea or answer. See *Jewett* v. *Tucker*, 139 Mass. 566, 577; *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233, 235. As no relief is sought in the bill against the E. C. Young Company, and its interests are the same as those of the defendant trustees whose rights are not prejudicially affected by the decree, and no prejudice occurs by reason of the nonjoinder to the rights of the parties before the court, the decree will not be delayed. See *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285, 295; *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233, 236.

There was no error in denying the motion of the defendant trustees and that of the defendant trust company for leave to amend their answers by alleging laches. "Although laches cannot be asserted as matter of right unless set up in the pleadings, it is always open to a court of equity in its discretion to do what justice and fair dealing require as to delay in making claims. *Stewart* v. *Joyce*, 201 Mass. 301, 307–308." *Raytheon Manuf. Co.* v. *Radio Corp. of America*, 286 Mass. 84, 100–101. The decree, however, which was entered by the judge imports a finding of all facts necessary to support it, see *Downey Co.* v. *282 Beacon Street Trust*, 292 Mass. 175, 178; *Commissioner of Insurance* v. *Commonwealth Mutual Liability Ins. Co.* 297 Mass. 219, 220, and he must be taken to have found that the plaintiff was not guilty of laches. Such a finding was warranted, if not required, by the evidence.

The defendant trustees have argued that the final decree

is "outside the stating part and the prayers . . . in the bill, and . . . the evidence." The judge was not limited by the specific prayers of the bill, but had authority to decree appropriate relief on its material allegations which were supported by the evidence. "Relief . . . is predicated upon the allegations, not upon the prayers, of a bill." *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 363. Had not the bill in the case at bar been amended by adding a general prayer for relief, such a prayer would be implied. See G. L. (Ter. Ed.) c. 214, § 12; *Allen* v. *French,* 180 Mass. 487, 489; *Karas* v. *Karas,* 294 Mass. 230, 231. The plain purpose of the bill in the case at bar was to establish the priority of the plaintiff's mortgage as a first lien; that in substance was prayed for. That the judge decreed relief in a different form from that prayed for by the plaintiff, but accomplishing the same result, is immaterial. The decree entered was within the scope of the bill and was sustained by the evidence as against the defendant trustees. We have examined the cases cited by the defendants as to this subject matter. It is sufficient to say that in each of them the decree was held to be outside the scope of the bill because it secured to the plaintiff rights which he did not seek to establish by its terms.

The defendant trustees' contention that the judge fixed the amount in which the 1928 mortgage of the plaintiff should be reinstated without any visible evidence to support the sum stated is without merit. On May 26, 1937, at the close of arguments the judge announced his finding for the plaintiff, and stated to counsel that the plaintiff is "equitably entitled to a decree, cancelling the discharge which was executed and recorded by mistake, and restoring the mortgage to its priority which it had before the discharge was executed, in such sum as is equitably due; and of course I am leaving that to you to figure out the mathematics; whether it is $5900.00 or $5800.00." On June 24, 1937, the final decree was approved by the judge and entered and the sum is fixed therein at $5,566.50 less certain credits referred to in paragraph 5 of the decree. No evidence is reported as to what took place between the judge and

counsel at the time of entry of the final decree with his approval. In these circumstances we think the inference is warranted that the amount fixed was reached by conference of the judge with counsel and that it was correctly computed. The finding is one of fact which will not be set aside unless plainly wrong, and, as an examination of the record discloses no error, the decree must stand in this respect. See *Townsend* v. *Townsend*, 243 Mass. 401, 403.

We are of opinion, however, that the injunctive relief granted in the decree was not warranted or required in the case of the defendant trust company. Its mortgage, which was admittedly a third mortgage, had been foreclosed by sale prior to the bringing of this suit, and the premises conveyed to the defendant Lynch. Whether she is a straw for the trust company or the actual owner of the premises need not be decided. In any event the trust company occupies no position adverse to that of the plaintiff. The decree is to be modified by excepting the trust company from its provision for injunctive relief and by providing that the bill be dismissed as to the trust company with costs of the appeal. As so modified the decree is affirmed with costs of the appeal as against the defendant trustees for the Randolph Associates.

*Ordered accordingly.*