PROVIDENT CO-OPERATIVE BANK & others *vs.*
JAMES TALCOTT, INC. & another.

Suffolk. May 5, 1970. — July 14, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Mortgage,* Of real estate: assignment, priority, discharge, validity. *Unjust Enrichment. Laches. Equity Jurisdiction,* Laches. *Volunteer. Subrogation. Mistake. Usury. Guaranty. Equity Pleading and Practice,* Counterclaim, Declaratory proceeding.

In a suit in equity by a mortgagee of real estate and one to whom it had assigned the mortgage and the assignee's son, who was the attorney for the mortgagee, to establish priority of the mortgage over an earlier mortgage of the same real estate by the same mortgagor to the defendant, subsidiary findings by a master warranted conclusions that delay on the part of the plaintiffs in prosecuting their claim during a period of more than two years in which the defendant did not press for satisfaction of its mortgage did not prejudice the defendant and that its defence of laches was not sustained. [187]

A mortgagee of real estate who assigned the mortgage and mortgage note without recourse and was paid the full amount due thereon had no standing thereafter to bring a suit in equity to establish priority of the mortgage over an earlier mortgage. [187–188] .

One who took an assignment of a real estate mortgage and the mortgage note and paid the mortgagee therefor the full amount then due thereon in order to help the assignee's son, who was the attorney for the mortgagee, out of a difficulty which arose by reason of his failure to discover an earlier recorded mortgage, was a purchaser for value and not a volunteer or intermeddler, and succeeded to all of the mortgagee's rights, including the right to a judicial determination whether the assigned mortgage had priority over the earlier recorded mortgage. [188]

Where it appeared among other facts found by a master in a suit in equity that a bank had held a first mortgage of certain real estate, that the mortgagor had given a second mortgage of the same property to a financing corporation, that upon the mortgagor's application to the bank for a "reloan" its attorney failed to discover the second mortgage and the bank discharged its mortgage and took a new mortgage securing an increased amount of loan, and that the financing corporation "always intended to be a second mortgagee" and was not "misled" and did not "change its position" or sustain "real hurt or harm" by any acts of the bank or its attorney, it was held that the new mortgage to the bank was a first mortgage securing payment of the amount owing

on the former first mortgage to the bank on the date it was so discharged by mistake, that the corporation's second mortgage was subordinate to the new mortgage in such amount, and that the new mortgage was not entitled to priority over the financing corporation's mortgage as to the increase in the bank's loan resulting from the "reloan." [189–190]

Failure of a borrower who gave a second mortgage of real estate as security for a loan to prove that the loan violated provisions of G. L. c. 140, §§ 90A–90E, defeated her claim that the mortgage was unenforceable as usurious. [190–191]

Following the execution of a guaranty agreement with a financing corporation providing that the guarantor would be liable to it for the due performance of all the obligations of a restaurant, that the guarantor waived "all notices of any kind" and consented "to any agreements or arrangements whatever" made with the restaurant or anyone else by the financing corporation, and that only full performance of the restaurant's obligations would discharge the guarantor's liability, acts of the financing corporation which occurred after the restaurant defaulted in its obligations and which substantially changed conditions as they had been when the guaranty agreement was executed did not render the agreement unenforceable against the guarantor, even though such acts were done without notice to her and without her knowledge or consent. [191–193]

Although a defendant in a suit in equity was not entitled to the declarations requested in her counterclaim for declaratory relief, the counterclaim should not have been dismissed, and a decree should have been entered adjudicating the rights involved therein. [193]

BILL IN EQUITY filed in the Superior Court on February 17, 1967.

The suit was heard by *Brogna, J.,* on a master's report.

*David G. Hanrahan* for the plaintiffs.

*Bernard Kaplan* for the defendant Lucy Janis.

*Sydney Berkman* (*Jeffrey M. Smith* with him) for the defendant James Talcott, Inc.

QUIRICO, J.   This is a suit in equity brought by the Provident Co-operative Bank (Provident), Hazel Hutchinson (Mrs. Hutchinson) and her son, Eben Hutchinson, Jr. (Hutchinson), against James Talcott, Inc. (Talcott) and Lucy Janis (Mrs. Janis). The plaintiffs seek a decree declaring that a real estate mortgage given by Mrs. Janis to Provident and now held by Mrs. Hutchinson has priority over another mortgage on the same real estate given by Mrs. Janis to Talcott. By a counterclaim set up in her

answer, Mrs. Janis seeks a decree cancelling a guaranty agreement which was secured by her real estate mortgage to Talcott and ordering Talcott to discharge the mortgage.

The trial judge entered a final decree on facts found by a master. We summarize these facts together with our computations based on his subsidiary findings.

On July 1, 1958, Mrs. Janis borrowed $25,000 from Provident and as security therefor she gave Provident a first mortgage on her house at 253 Prospect Street, Revere. Her then husband Dan Janis (Janis) thereafter operated the Yankee Fisherman Restaurant, Inc. (Yankee) in Boston. On or about November 6, 1963, Janis completed a financing transaction with Talcott for Yankee in the amount of $200,200. The security given to Talcott for this loan included a chattel mortgage from Yankee, the assignment of two insurance policies on the life of Janis, a pledge of all of the shares of stock in Yankee, and a second mortgage given by Mrs. Janis to Talcott on the property in Revere. The second mortgage recited that it was subject to the first mortgage of Provident, "the outstanding balance of which first mortgage on the date hereof is $20,724.66." All of the real estate mortgages, chattel mortgage, and financing statements described above were duly recorded or filed as required by law on or about the date of their execution.

In the fall of 1964 Yankee's payments to Talcott on the $200,200 loan were in default. Janis requested a further loan from Talcott but it was refused. Janis and Mrs. Janis then applied to Provident for a "re-loan of the 1958 first mortgage loan of $25,000 increased to the face amount of $30,000, on the old loan basis of 20 years, direct reduction." In the application for the re-loan Janis listed the 1958 first mortgage then held by Provident as "reduced to $19,849," but in the place provided for information on a second mortgage he made no entry. At that time both Janis and Mrs. Janis knew that Talcott held a second mortgage on the Revere property covered by the application, but Provident did not learn of it until August, 1965.

Provident approved the application and referred it to the

plaintiff Mr. Hutchinson, who was its attorney, for examination of the title and the closing of the transaction. In his examination of the title Mr. Hutchinson failed to discover Talcott's 1963 second mortgage on the property. On November 30, 1964, Provident discharged its 1958 mortgage from Mrs. Janis and recorded her new mortgage for $30,000. As a result of Mr. Hutchinson's oversight in the examination of the title, the recording of these new documents on November 30, 1964, had the effect of making it appear on the record that Talcott's mortgage of 1963 was a first mortgage, and the new $30,000 mortgage to Provident a second mortgage. This change in the priorities of the mortgages was not intended by any of the parties. The balance due Provident on the 1958 mortgage from Mrs. Janis when it was discharged was principal of $19,849.74 plus interest of $173.68, totaling $20,023.42. The new funds obtained by Janis and Mrs. Janis in this re-loan were used to pay Talcott $2,310 for overdue payments. The balance was used to pay creditors of Yankee and to conduct Yankee's business. The value of the mortgaged real estate at that time was $45,000, but it has since deteriorated in "physical aspect as well as value" because Mrs. Janis has not maintained it.

On or about February 25, 1965, Yankee was involved in serious financial difficulties and it executed a trust indenture and note for $110,000 to several trustees for the benefit of its general unsecured creditors. At that time Mr. Hutchinson first learned that on the records of the registry of deeds Talcott held a first mortgage and Provident a second mortgage on the Janis property. He did not inform Provident about this situation until August, 1965, when Provident asked him to begin foreclosure proceedings on the Janis mortgage. Mrs. Janis had made seven payments of $305 each on the $30,000 mortgage of November 30, 1964. They were applied first to interest so that only $559.68 was applied to principal. Thus the principal balance was $29,440.32 when the last payment was made on August 6, 1965.

After learning that it held a second mortgage of record Provident tried to collect the amount due from Mrs. Janis,

but did not succeed. In November, 1965, Mr. Hutchinson, acting as counsel for Provident, requested Talcott to subordinate its mortgage in favor of that of Provident. Talcott refused, but through its counsel it did offer to subordinate the mortgage for the purpose of foreclosure only, with the understanding that the proceeds of the foreclosure sale would be held in escrow pending final determination by the court of the rights of the parties to the fund. Provident and Mr. Hutchinson would not agree to that.

In December, 1965, Provident turned to Mr. Hutchinson for payment of its then second mortgage from Mrs. Janis dated November 30, 1964. Mr. Hutchinson did not wish to have a claim made against his "errors and omissions liability" insurer, so he sought help from his mother. On December 5, 1965, Mrs. Hutchinson purchased the mortgage from Provident for the sum of $29,033.15, and at some time she also paid the city of Revere $1,138.80 for the full amount of the 1965 taxes on the mortgaged property.[1]

Mrs. Hutchinson purchased the mortgage to help her son in his difficulty. They agreed that the amounts thus expended by her would be an advance against her son's future inheritance from her estate. Upon payment by Mrs. Hutchinson, Provident indorsed the Janis mortgage note of November 30, 1964, to her, and also assigned to her the mortgage securing the note. The indorsement and assignment were made without recourse to Provident. The assignment has not been recorded.

---

[1] The amount of this payment was computed as follows:

| | | |
|---|---|---|
| Principal balance due on mortgage on 12/5/65 | | $29,440.32 |
| 4 months interest due on mortgage to 12/5/65 | | 566.68 |
| Late charge | | 16.19 |
| | | $30,023.19 |
| Less: Tax Escrow | $962.65 | |
| Share Account | 27.32 | 990.04 (*sic*) |
| Amount paid to Provident by Mrs. Hutchinson | | $29,033.15 |

The amount paid Revere was $176.15 more than the $962.65 which Mrs. Janis had paid to Provident toward those taxes, and which was deducted in computing the amount paid Provident by Mrs. Hutchinson.

Mrs. Hutchinson and her son then tried to collect the mortgage debt from Janis and Mrs. Janis but did not succeed. They also conferred with counsel for Mrs. Janis and for Talcott in attempts to adjust the matter but did not succeed. On January 30, 1967, Talcott started a suit in equity in the Land Court for authority to foreclose its mortgage on the Janis real estate. On February 17, 1967, Provident and Mrs. Hutchinson started the present suit in equity, and obtained a restraining order and temporary injunction which have prevented Talcott from proceeding with its foreclosure. Talcott attempted to have the preliminary injunction modified or dissolved, but did not succeed. Mr. Hutchinson was later added as a plaintiff.

The financial affairs of Yankee deteriorated rapidly after it gave the trust indenture for the benefit of unsecured creditors on February 25, 1965. On August 30, 1965, Talcott foreclosed on the shares of stock in Yankee which had been pledged to it by Janis, and bought the shares itself. Talcott caused new officers to be elected for Yankee, and operated the restaurant through a new manager. On September 10, 1965, Talcott made a new financing agreement with Yankee and received security interests covering all of its assets including both tangible and intangible items. The latter included its accounts, lease and liquor license. On March 22, 1966, Yankee was adjudicated bankrupt, and its assets were sold by the trustee in bankruptcy to a new corporation called Jaspan Restaurant, Inc. (Jaspan), subject to Talcott's security interests. Jaspan then entered into a financing arrangement and security agreement with Talcott. By its terms it recognized the existence and continuance of Talcott's previous security interests, and expressly reserved all of Talcott's "rights against all guarantors, endorsers and other parties liable on or with respect to said note, and all collateral security held with respect thereto." Mrs. Janis had no knowledge of this reservation. Jaspan encountered financial difficulties and failed to make payments to Talcott when due. On December 28, 1966, after notice to Mrs. Janis, Talcott foreclosed

its security interest in the restaurant property and it became the purchaser of all that was sold.

The master concluded his report with the following finding: "I find that the 1958 mortgage was discharged by mistake and through inadvertence. I find generally that Talcott always intended to be a second mortgagee; that it was not misled, induced or persuaded to do anything contrary to its own disposition by any word or act of the . . . [plaintiffs]; nor did it change its position because of the bank's or its attorney's negligence. I cannot and do not find that any of Talcott's rights have been affected. I find Talcott is an unexpected beneficiary of a priority, in consequence of another's innocent, unfortunate neglect, for which it did not bargain; and as to which it, itself, was dilatory in enforcing. Upon all the evidence I heard it has sustained no real hurt or harm. To permit this priority to stand under all the facts and circumstances of this case, I find as a fact would result in unjust enrichment to it."

After confirming the master's report the trial court entered a final decree dismissing the claims of all three plaintiffs and the "cross-action" of Mrs. Janis. It then ordered that (a) if the plaintiffs or "either of them" paid Talcott $27,111.58 [2] plus interest from August 5, 1965, Talcott's mortgage would be deemed paid and it should give the plaintiffs a discharge thereof, and (b) if the plaintiffs did not make such payment within thirty days Talcott could foreclose its mortgage and from the proceeds pay itself $27,111.58 plus interest from August 5, 1965, paying any surplus to Mrs. Hutchinson. It also provided that if Talcott's foreclosure sale brought less than $27,111.58 plus

---

[2] This amount seems to have been computed on the following basis:

| | | |
|---|---|---|
| Value of Janis real estate in November, 1964 | | $45,000.00 |
| Less: Balance due on Provident first mortgage on 11/30/64: | | |
|     Balance of Principal | $19,849.74 | |
|     Balance of Interest | 173.68 | |
| | $20,023.42 | |
| Less: Seven payments of $305 made by Mrs. Janis after 11/30/64 | 2,135.00 | 17,888.42 |
| Amount ordered paid to Talcott by plaintiffs and Mrs. Janis: | | $27,111.58 |

interest from August 5, 1965, Mrs. Janis and the three plaintiffs should jointly and severally pay Talcott the amount of the deficiency. The appeals of the plaintiffs and of Mrs. Janis are before us for decision. The only question raised by the appeals from the final decree is "whether the final decree was within the scope of the bill and supported by the facts found." *Ledoux* v. *Lariviere,* 261 Mass. 242, 244. *Hermanson* v. *Seppala,* 272 Mass. 197, 199.[3]

Talcott contends that even if the plaintiffs' claim were otherwise meritorious they are barred from relief for two reasons which we shall consider at this point.

1. Talcott pleaded in its answer, and now asserts, that the plaintiffs have been guilty of laches in the prosecution of their claim. To sustain this defence Talcott has the burden of proving not only delay by the plaintiffs, but further that their delay has resulted in prejudice or disadvantage to Talcott. *Stewart* v. *Finkelstone,* 206 Mass. 28, 36. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69. Laches is a question of fact, and the master found against Talcott on that factual issue. In his report he says: "On all the foregoing . . . [subsidiary findings] and on all the evidence, I infer Talcott was too busy and too optimistic with its own and Jaspan's prospects to press the Lucy Janis mortgage to foreclosure, some form of settlement or liquidation. It had the same opportunity to petition for foreclosure in 1965 and 1966 as it had in 1967. Only when it became clear that it couldn't make the grade by its own efforts and Jaspan had failed its expectations did Talcott take drastic steps. I cannot and do not find loss or harm to Talcott, due to . . . [plaintiff] action or neglect." The subsidiary findings support that conclusion.

2. Talcott also argues that since Provident has been paid

---

[3] Talcott filed numerous exceptions to the master's report. The trial judge entered an order and an interlocutory decree sustaining some of the exceptions and overruling others. No party claimed any appeal therefrom or from the interlocutory decree confirming the master's report. No party contends that the final decree was affected by the action on the exceptions so as to require revision of the interlocutory decree under G. L. c. 214, § 27.

the full amount due it on the mortgage given it by Mrs.
Janis on November 30, 1964, and has assigned the note and
mortgage to Mrs. Hutchinson, it has no further interest or
standing on the issue of the priorities of the two mortgages.
That contention is correct, and the trial judge properly
denied Provident relief. Talcott also contends that Mrs.
Hutchinson has no standing because (a) she is a volunteer,
and (b) if she is not a volunteer she is an assignee of the
note and mortgage but is not by reason thereof subrogated
to the rights which Provident might have had on the ques-
tion of priorities. We reject both aspects of the contention.
Mrs. Hutchinson was a purchaser of the note for value, viz.,
$29,033.15, and the security of the mortgage passed to her
by the assignment from Provident. She was not a volunteer
or intermeddler gratuitously paying off the mortgage debt
of Mrs. Janis. She was no less a purchaser for value be-
cause she was acting in a desire to help her son in his diffi-
culty. By virtue of her purchase from Provident, Mrs.
Hutchinson succeeded to all of Provident's rights in relation
to the mortgage assigned, including the right to a judicial
determination whether it was a first mortgage or a second
mortgage. *United States Trust Co.* v. *Commonwealth,* 245
Mass. 75, 78–79. By purchasing the mortgage, Mrs.
Hutchinson was in effect subrogated to the rights of Provi-
dent. "Subrogation is the substitution of one person in
place of another, whether as a creditor or as the possessor
of any other rightful claim, so that he who is substituted
succeeds to the rights of the other in relation to the debt or
claim, and its rights, remedies, or securities." *Jackson Co.* v.
*Boylston Mut. Ins. Co.* 139 Mass. 508, 510. If Talcott's
mortgage is in fact and good conscience a second mortgage,
it would be a miscarriage of justice to hold that Talcott
may have all of the advantages of a first mortgage simply be-
cause the litigating party in interest is now Mrs. Hutchinson
rather than Provident. We will consider the priorities be-
tween the two mortgages on the same basis as we would
were Provident still the holder of the mortgage of Novem-
ber 30, 1964.

We come now to the issue whether Provident originally, and Mrs. Hutchinson presently, are entitled to a declaration that their security for the debt is a first mortgage having priority over the mortgage held by Talcott. The master found that Provident's 1958 mortgage was discharged by mistake and through inadvertence; that Talcott always intended to have and believed it had a second mortgage until after the events of November 30, 1964; that it was not misled by any word or act of the plaintiffs; that it did not change its position because of the negligence or any other act of the plaintiffs; that its position was not adversely affected by the acts of the plaintiffs; and that it would be unjustly enriched if it were allowed to exercise a priority of security over the mortgage held by Mrs. Hutchinson. "It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected." *North Easton Co-op. Bank* v. *MacLean,* 300 Mass. 285, 292. See *Bruce* v. *Bonney,* 12 Gray, 107, 113; *Willcox* v. *Foster,* 132 Mass. 320, 323; *Short* v. *Currier,* 153 Mass. 182, 184; *Worcester No. Sav. Inst.* v. *Farwell,* 292 Mass. 568, 573–574; *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158, 161–162; *Piea Realty Co. Inc.* v. *Papuzynski,* 342 Mass. 240, 246–248, and authorities cited; *French Lumber Co. Inc.* v. *Commercial Realty & Fin. Co. Inc.* 346 Mass. 716, 719–720.

We hold that by the application of the general rule stated above to the facts of this case Mrs. Hutchinson is entitled to be declared the holder of a first mortgage on the property at 253 Prospect Street, Revere, to secure the payment of whatever amount would now be payable on the mortgage and note given by Mrs. Janis to Provident on July 1, 1958, if that mortgage had not been discharged by mistake on November 30, 1964. The final decree entered by the trial judge does not accomplish that. Instead it gives priority to the Talcott mortgage by (a) requiring the plaintiffs to pay Talcott the sum of $27,111.58 which appears to have

been a computation of the maximum potential value of Talcott's junior lien on November 30, 1964, or (b) requiring Mrs. Janis and the plaintiffs to pay Talcott any deficiency resulting from its foreclosure if the plaintiffs do not elect to pay Talcott $27,111.58 for a discharge of its mortgage. That decree attempts to shift all of the element of risk which is an inherent part of a second mortgage to the holder of the first mortgage. Talcott is not entitled to that. It is entitled only to the benefit of a second mortgage subordinate to Provident's 1958 mortgage in the amount owing at the time it was mistakenly discharged. Mrs. Hutchinson's first mortgage now secures the payment of the $20,023.42 balance of principal and interest due on November 30, 1964, plus the sum of $176.15 paid by her to the city of Revere for 1965 taxes over and above the $962.65 which Mrs. Janis had paid. This total of $20,199.57 must then be reduced by the amount of the seven payments of $305 each made by Mrs. Janis between November 30, 1964, and August 6, 1965. Each of the payments is to be applied first to interest due on the November 30, 1964, principal balance of $19,849.74 (or the reduced balance thereof after each payment), and the remainder to the reduction of the principal balance. The mortgage also secures the payment of (a) interest after August 6, 1965, on the principal balance as thus reduced and (b) any real estate taxes paid by the mortgagee pursuant to G. L. c. 60, § 58.[4] *Lynn Five Cents Sav. Bank* v. *Portnoy*, 306 Mass. 436, 441. The security as thus limited will not detract from the security which Talcott would now have as a second mortgagee if Provident's 1958 mortgage had not been discharged. Neither will it give Mrs. Hutchinson any priority over Talcott as to the increase in principal or interest thereon which resulted from the "reloan" of November 30, 1964.

By her answer and counterclaim Mrs. Janis sought declara-

---

[4] The record before us does not contain all of the information necessary for the entry of a new decree. It may be necessary to hold limited hearings to obtain such information or computations in order to bring the final decree up to date unless it is furnished by stipulation.

tions (a) that the second mortgage and note which she gave to Talcott on November 6, 1963, were "in violation of G. L. c. 140, §§ 90A–90E, inclusive, . . . [and] usurious, void, and unenforceable"; (b) that the guaranty agreement she had made with Talcott on the same date was "terminated, cancelled, discharged, or otherwise unenforceable" as against her; and (c) that Talcott is required to discharge the mortgage.

We first consider the defence of illegality. General Laws c. 140, § 90A, prohibits any person from charging more than one and one-half per cent per month interest on a loan of more than $1,500 secured by a second mortgage on a dwelling house assessed for not more than $25,000. Sections 90A through 90E prescribe additional requirements for such loans and penalties for noncompliance. Mrs. Janis has the burden of proof to establish the illegality which she alleges. *Savoy Fin. Co.* v. *De Biase*, 281 Mass. 425, 433. *Town Taxi, Inc.* v. *Goulston*, 287 Mass. 325, 328. *Chamberlain* v. *Employers' Liab. Assur. Corp. Ltd.* 289 Mass. 412, 419. It is clear from the master's report that she failed to sustain this burden[5] and therefore she cannot prevail on this defence. Thus there is no occasion for us to consider whether any failure to comply with the statute renders the mortgage void, or whether it involves other consequences. *Fassas* v. *First Bank & Trust Co.* 353 Mass. 628, 629.

All of the other grounds alleged by Mrs. Janis as entitling her to a declaration that the guaranty agreement is no longer enforceable against her by Talcott are based on Talcott's actions after default by Yankee. These included Talcott's participation in Yankee's giving of a trust indenture for unsecured creditors and in its bankruptcy proceedings, Talcott's foreclosure of the pledge of Yankee stock, its role in Yankee's

---

[5] No illegality was apparent on the face of the mortgage and note. The master's report states: "All other evidence as was produced at the hearings before me purporting either to establish, on the one hand, the validity of the loan under the statute, or its illegality, on the other, was conflicting and disputed. I was not persuaded by any of the parties that their proof or their position was the more tenable, or controlling one. I am unable to make a definitive finding in respect to this specific issue."

management and operations thereafter, its transactions with Jaspan and others, and its ultimate foreclosure of all of its security interests except the real estate mortgage. Her argument is that Talcott did these and other similar things without her knowledge, without giving her notice, and without her consent and that therefore she has been discharged of all liability under the guaranty agreement. In support of her argument she cites *Warren* v. *Lyons,* 152 Mass. 310, and *Germania Fire Ins. Co.* v. *Lange,* 193 Mass. 67. Both cases represent applications of "[t]he general rule . . . that a substantial change in the conditions to which . . . a bond relates, made without the knowledge and consent of the surety, discharges him from further liability." *Germania Fire Ins. Co.* v. *Lange, supra,* at p. 69. However, that general rule does not apply in this case because by the language of the guaranty agreement which she signed Mrs. Janis waived her right to receive the notices which she now says she did not receive, and consented to all of Talcott's acts upon which she now relies as grounds for her release from the agreement.[6] Mrs. Janis is bound by her agreement which makes the general rule inapplicable. *Manufacturers' Fin. Co.* v. *Rockwell,* 278 Mass. 502, 505–506. *Conway Sav. Bank* v. *Vinick,* 287 Mass. 448, 451–452. *Merchants Natl. Bank* v.

---

[6] The guaranty agreement between Janis and Mrs. Janis and Talcott reads in part: "[W]e . . . agree to be . . . jointly and severally primarily liable to you for the due performance of all the Customer [Yankee] Obligations, both present and future, and any and all subsequent renewals, continuations, modifications, supplements and amendments thereof, and for the payment of any and all debts of the Customer of whatever nature, whether matured or unmatured, whether absolute or contingent and whether now or hereafter existing or arising or contracted or incurred or owing to or acquired by you by assignment, transfer or otherwise. . . . We hereby waive notice of acceptance hereof and of all notices of any kind to which we may be entitled . . . . We further waive notice of and hereby consent to any agreement or arrangements whatever with the Customer or anyone else, including without limitation, agreements and arrangements for payment, extension, subordination, composition, arrangement, discharge or release of the whole or any part of said Customer Obligations, or for releases of collateral and/or other guarantors, or for the change or surrender of any and all security, or for compromise, . . . and the same shall in no way impair our liability hereunder. Nothing shall discharge or satisfy our liability hereunder except the full performance and payment of said Customer Obligations with interest. . . . This instrument is a continuing guaranty and shall continue in full force and effect . . . until the full performance, payment and discharge of all said Customer Obligations, and thereafter until actual receipt by you from us of written notice of cancellation . . . ."

*Stone,* 296 Mass. 243, 251–252. The guaranty agreement signed by Mrs. Janis has not been terminated, cancelled or discharged, and has not become unenforceable against her. She is not entitled to such a declaration as requested in her counterclaim.

Although Mrs. Janis is not entitled to the declarations which she requests in her counterclaim, the counterclaim should not have been dismissed. It should have been disposed of by a decree adjudicating the rights involved, *Foley* v. *Springfield,* 328 Mass. 59, 62. *Morgan* v. *Banas,* 331 Mass. 694, 698. *Vasilakis* v. *Haverhill,* 339 Mass. 97, 101. *Hannan* v. *Enterprise Publishing Co.* 341 Mass. 363, 365. Therefore the new final decree should include declarations that the second mortgage given by Mrs. Janis to Talcott on November 6, 1963, is enforceable subject to the priority of the first mortgage held by Mrs. Hutchinson, and that the guaranty agreement of the same date is enforceable by Talcott against Mrs. Janis.

The final decree is reversed and a new decree is to be entered in accordance with this opinion.

*So ordered.*