Fremont-Smith, J.
This matter is before the Court upon the plaintiffs motion for summary judgment. The plaintiff, First Essex Bank, FSB (“First Essex”), moves for summary judgment on its claims of mutual mistake and unjust enrichment, counts IV and VI, and seeks an order that it be allowed to reach and apply the surplus foreclosure proceeds, count V.
BACKGROUND
The following facts are undisputed. On October 31, 1990, defendants Jaishri Singh and Juanita C. Singh (collectively “Singh”) granted a mortgage to Leader Mortgage Company, Inc. (“Leader") in the amount of $286,250 relating to a piece of property owned by Singh at 12 Apache Avenue, Andover, Massachusetts (the “Property”). The Leader mortgage was recorded November 1, 1990, and was eventually assigned to Residential Funding on March 6, 1992.
On September 9, 1994, First Essex received and recorded a mortgage on the Property. This second mortgage was given to secure personal guaranties executed by Singh in conjunction with a loan of $200,000 given by First Essex to Samrat, a Massachusetts corporation of which Jaishri Singh was president and treasurer.
On December 15, 1994, First Essex executed a Subordination of Mortgage in favor of GMAC Mortgage Corporation of Pennsylvania (“GMAC”).
On December 28, 1994, GMAC received and recorded a mortgage in the amount of $291,000, and subsequently assigned its mortgage to Residential Funding.
On July 11, 1995, Ford Consumer Financing Company, Inc. (“Ford”) received and recorded a mortgage on the Property in the amount of $118,158.64.
On July 18, 1995, Ford through its legal counsel Cushing & Dolan, P.C. sent a letter to First Essex requesting a Confirmatory discharge of First Essex’s mortgage on the Property.
On August 2, 1995, First Essex executed a Confirmatory discharge of its mortgage, which was sent to Ford. The execution of this discharge was a mistake as the loan had not been satisfied or discharged as of August 2, 1995.
On May 10, 1996, First Essex executed a new loan arrangement with Samrat and Singh to extend additional credit in the amount of $700,000. Singh acknowledged the continuing affect of the mortgage on the Property.
On June 25, 1996, Ford received and recorded an additional mortgage on the Property for $188,200.
On October 25, 1996, Robert Fournier obtained a Writ of Attachment against Jaishri Singh in the amount of $250,000, and Archibald Lemieux obtained a Writ of Attachment in the amount of $100,000.
On February 18, 1997, Residential Funding held a foreclosure sale of the GMAC mortgage on the Property. The Property sold for $375,000, which, after payment of the GMAC mortgage, left a surplus of $61,441.38. First Essex commenced this action to restore its position as second in priority and to obtain the surplus funds.
The following material facts are in dispute. First Essex alleges that the July 18, 1995 letter from Ford’s counsel was the first contact First Essex had with Ford concerning this matter; that the letter either mistakenly or deliberately misrepresented the status of the September 9, 1994 First Essex mortgage on the Properly; that based on this mistake or misrepresentation, First Essex erroneously issued the confirmatory discharge; and that Ford was on notice that its mortgage was behind the First Essex mortgage.
Ford alleges that Singh informed Cushing & Dolan, Ford’s attorneys, that the First Essex mortgage had been discharged when Singh refinanced with GMAC; that Moira J. Dewar, a real estate paralegal at Cushing & Dolan, contacted Attorney Lorri Covitz’s office, Singh’s attorney, and obtained what was believed to be a settlement statement of the First Essex mortgage; that Dewar contacted First Essex prior to the July 11, 1995 closing on the Ford mortgage; that First Essex informed Dewar that the mortgage had been discharged and that a request for a confirmatoiy discharged should be sent to First Essex with a copy of the settlement statement, a copy of the mortgage, and a $25 processing fee; that Cushing & Dolan forwarded the settlement statement and mortgage to First Essex with the July 18, 1995 letter; that based on the representation by Singh and First Essex, that the First Essex mortgage was discharged and that a confirmatory discharge would be sent, Ford closed on the loan to Singh on July 11, 1995; and that it is normal conveyancing practice in Massachusetts to rely on statements of an institutional lender that a discharge *26 will be forthcoming and not wait for the original discharge prior to going to record on a refinance or purchase.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgement as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving parly bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the moving party does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
Plaintiff argues that the confirmatory discharge was issued due to the mutual mistake of the parties, and the discharge should be set aside in order to place plaintiff back into second priority ahead of Ford, preventing Ford from being unjustly enriched. In order to prevent unjust enrichment, “it is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected." General Builders Supply Co. v. Arlington Co-op. Bank, 359 Mass. 691, 696-97 (1971) (quoting North Easton Co-op. Bank v. MacLean, 300 Mass. 285, 292 (1938)); Provident Co-op. Bank v. James Talcott, Inc., 358 Mass. 180, 189 (1970); Home Owners’ Loan Corp. v. Baker, 299 Mass. 158, 161-62 (1937). The rule has been used to prevent a lienor, who knows and expects to be second in priority, from being elevated to first priority and receive a windfall, based solely on a mistaken discharge of a mortgage. See General Builders Supply Co., 359 Mass. at 696-98 (bank not entitled to reform discharge of a mortgage to the prejudice of subsequent lienors who were without knowledge of superior priority of bank); North Easton Co-op. Bank, 300 Mass. at 292 (second mortgagee not prejudiced by reinstatement of first mortgage when second mortgagee knew it held second mortgage); Provident Co-op. Bank, 358 Mass. at 189 (discharged mortgage reinstated where second mortgagee intended to have second mortgage and did not alter position because of negligence or acts of first mortgagee); Progressive Consumer Federal Credit Union v. United States, 79 F.3d 1228, 1235-36 (1st Cir. 1996).
It is undisputed that the issuing of the confirmatory discharge on August 2, 1995, was mistaken because the mortgage had not been satisfied or discharged as of that date, but there are numerous facts in dispute as to whether Ford will be unjustly enriched if the discharge is not rescinded, or conversely, whether Ford will be damaged, as a result of First Essex’s negligence, if the discharge is rescinded.
According to First Essex, Ford never contacted First Essex prior to closing on Ford’s loan with Singh on July 11, 1995; Ford knew, based on the record at the Registry of Deeds, that Ford’s July 11, 1995 loan was behind First Essex in priority; and no prejudice would result from the reinstatement of the mortgage because the confirmatory discharge was issued in reliance on Ford’s own intentional or negligent misrepresentations in its July 18, 1995 letter. Ford, on the other hand, contends that through its counsel, Cushing & Dolan, it contacted First Essex prior to closing on the July 11, 1995 loan; that the July 11, 1995 loan was approved because Ford’s counsel were given verbal assurances by First Essex that the loan had in fact been discharged despite the absence of a recording at the Registry of Deeds; and that Ford reasonably relied on such assurances and believed it would be second in priority behind Residential Funding, because the practice of closing on a loan based on an oral assurance of discharge, prior to receiving a confirmatory discharge, is a standard practice in Massachusetts.
In these circumstances, despite the undisputed mistake, issues of material fact remain as to whether Ford will be unjustly enriched unless the confirmatory discharge is set aside, or conversely, whether Ford would be substantially and unfairly prejudiced by reinstatement. Thus, the jury must resolve whether Ford reasonably relied on First Essex’s discharge to make its loan, so that Ford was not unjustly enriched from the mistaken discharge, or whether the discharge was itself the result of an intentional or negligent misrepresentation by Ford, upon which plaintiff reasonably relied, so that Ford is unjustly enriched unless the discharge is rescinded.
ORDER
Accordingly, for each of the above reasons, plaintiffs motion for summary judgment, on counts IV, V, and VI of the complaint, is DENIED.