SAEED MORAD *vs.* REBECCA SILVA & others.

Suffolk. February 8, 1956. — March 30, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Mortgage*, Of real estate: priority. *Subrogation*.

The facts, that following the giving of two real estate mortgages on the same parcel to the same person and the recording of both, the later given mortgage being recorded first, the landowner in a refinancing obtained a loan from a savings bank, used it to pay and obtain a discharge of the later given mortgage, and as security for repayment of the loan gave a mortgage on the same parcel to the bank, which believed it was receiving a first mortgage because its title examiner had failed to discover the earlier given of the two previous mortgages, and, that the holder of those two mortgages, who was experienced in real estate matters and knew that savings banks in real estate loans were only allowed to lend on first mortgages, waited in the bank while the refinancing transaction was in progress in another room and might

have had a "suspicion" that a mortgage was being arranged, did not justify a ruling that equity required placing his still outstanding earlier given mortgage in a position junior to that of the bank's mortgage.

BILL IN EQUITY, filed in the Land Court on March 13, 1951, against Rebecca Silva.

Fairhaven Institution for Savings, Antonio Silva and Edward Sylvia were subsequently added as defendants on motion.

The case was heard by *Cotton,* J.

*Gerald P. Walsh,* for the plaintiff.

*Solomon Rosenberg,* for Fairhaven Institution for Savings.

SPALDING, J. This is a bill in equity brought in the Land Court for authority to foreclose a mortgage in accordance with the soldiers' and sailors' civil relief act of 1940 (U. S. C. [1946 ed.] Title 50, Appendix, § 532), and with St. 1943, c. 57, as amended by St. 1945, c. 120. The judge made findings of fact and an order for decree. From a decree entered accordingly the plaintiff appealed.

Facts found by the judge or not in dispute are these. Prior to 1949 the defendant Rebecca Silva owned a parcel of land on Fairhaven Road, Mattapoisett, hereinafter referred to as the locus. Subsequently, her husband Antonio and one Edward Sylvia entered into a business agreement with the plaintiff by which the plaintiff agreed, subject to a contingency not material here, to sell certain property (not the locus here involved) to Antonio and Edward upon stated terms. As security for the performance of this agreement a mortgage on the locus dated September 16, 1949, was given by Rebecca to the plaintiff. This mortgage was recorded on December 9, 1949, and will be referred to hereinafter as the indemnity mortgage. Subsequently the agreement which gave rise to the indemnity mortgage was involved in litigation which resulted in a decree ordering specific performance of the agreement. *Morad* v. *Silva,* 331 Mass. 94. This decree was not complied with and the plaintiff by sale established the liability under the indemnity mortgage and brought the present proceedings for authority to foreclose it.

Sometime after the indemnity mortgage was given, Antonio and Edward embarked on another business enterprise, and to finance it Rebecca gave another mortgage on the locus to the plaintiff to secure the payment of $4,000. This mortgage was dated October 28, 1949, and was recorded on October 31, 1949; it contained no reference to the prior indemnity mortgage. To differentiate this from the indemnity mortgage it will sometimes be referred to hereinafter as the money mortgage. It will be noted that the indemnity mortgage was given prior to the money mortgage but the latter was the first to be recorded.

Having decided to rearrange her finances, Rebecca negotiated a $2,800 loan with the Fairhaven Institution for Savings which, on motion, was admitted as a party and will be referred to hereinafter as the bank. The money was lent at the bank on October 26, 1950, and while the transaction was taking place the plaintiff waited in the lobby. On concluding the negotiation with the bank, Antonio came out of a back room and gave the plaintiff the bank's check for $2,800 indorsed by Rebecca to whom it was payable. He also gave the plaintiff $349.50 in cash. The check and cash, amounting to $3,149.50, represented the principal and interest then due on the money mortgage. In return for these payments the money mortgage was discharged by the plaintiff. As security for the $2,800 lent to Rebecca the bank received from her a mortgage on the locus. Due to the fact that its attorney in his title search had failed to discover the indemnity mortgage, the bank assumed that it was receiving a first mortgage on the locus.

"Based upon the fact that plaintiff was experienced in real estate business, had dealt with the bank before, it can be reasonably inferred that he was aware of the fact that savings banks were by law only allowed to loan on first mortgages; that, when he waited in the bank area where the tellers receive and pay out money, and the Silvas were in another room, it is difficult for me to believe that he did not at least suspicion a mortgage was being negotiated."

The judge ruled that "substantial justice and equity and

the substantial merits of the case would be accomplished by placing the . . . bank mortgage senior to . . . [the indemnity mortgage] held by the plaintiff." The judge further ruled that, the plaintiff's mortgage being in default, the plaintiff was entitled to a decree authorizing foreclosure of that mortgage by sale and entry, subject, however, to the bank's mortgage.

We are of opinion that the specific findings of the judge do not support his ultimate conclusions.

In support of the decision below the bank relies heavily, if not wholly, on the case of *Worcester North Savings Institution* v. *Farwell*, 292 Mass. 568; and it is apparent that the judge considered that case pertinent. There the owner of certain real estate, which was subject to three duly recorded mortgages, decided to do some refinancing. He negotiated a mortgage loan with the plaintiff bank and used the proceeds to pay off the first mortgage. The first and second mortgages were discharged. Two new mortgages were executed and recorded. One, which was believed to be a first mortgage, was given to the bank and the other, which was assumed to be a second mortgage, was given to the holder of the prior second mortgage. The holder of the third mortgage did not know of these transactions and was not a party to them. In his search of the title, the plaintiff's attorney failed to discover the third mortgage. Consequently the third mortgage had become a first mortgage, and the plaintiff's mortgage and that of the former second mortgagee had become second and third mortgages, respectively. The plaintiff and the former second mortgagee sought in a suit in equity to have their mortgages put in the position of first and second mortgages, respectively, so that the position of the former third mortgage would be junior to their mortgages. It was held that the plaintiff and the former second mortgagee were entitled to the relief sought. The reasoning of the court was that the plaintiff had the right to be subrogated to the lien of the mortgage discharged with money advanced by it for that purpose. The former second mortgagee, no intervening rights having

been affected, was entitled to have his mortgage put in the position of a second mortgage. The negligence of the plaintiff's attorney did not bar relief because it did not appear that there had been any change of position by the third mortgagee.

But the case at bar is distinguishable. In the *Farwell* case the third mortgagee ultimately was no worse off than he had been before. He originally had nothing more than a third mortgage and that was the position he was put in by the decree after rescript. That is not the situation before us. The plaintiff here was always the holder of a valid first mortgage on the locus which had been duly recorded. Therefore, the theory of subrogation of the *Farwell* case on which the decision below appears to have been based was not applicable.

There is nothing in the other findings of the judge that supports his decree. The fact that the plaintiff was in the bank while the loan of October 26, 1950, was being negotiated is not of itself a sufficient ground for placing his indemnity mortgage in a position junior to that of the bank's mortgage. There is nothing to show that the bank's action was induced by any fraud on the part of the plaintiff. The finding that, as a real estate operator, the plaintiff knew that savings banks could lend only on first mortgages is not decisive, for that is not the only type of loan such banks can make. See G. L. (Ter. Ed.) c. 168, §§ 51A, and 54 Ninth (a). Nor can the decree below be rested on the finding that the plaintiff might have had a suspicion that the bank was giving a mortgage.

The final decree is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*