PIEA REALTY CO., INC. *vs.* WALTER J. PAPUZYNSKI & others
(and two companion cases[1]).

Hampden.    September 29, 1960, January 17, 1961. — March 14, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

*Mortgage,* Of real estate: discharge.    *Unjust Enrichment.    Equity Pleading and Practice,* Rehearing.

In the circumstances, where, in order to make an adjustment of the interest and maturity of a mortgage note, the mortgagee received a new note and a new mortgage and surrendered the original note marked "Paid" but the new mortgage was never recorded nor the original mortgage discharged, and it appeared that the parties fundamentally did not intend to change the security position of the mortgagee although there was no specific agreement that the original mortgage would remain as security for the new note, the mortgagee in equity, to prevent unjust enrichment, was entitled to retain the security afforded by the undischarged original mortgage as against the mortgagor, and also as against one who, after the adjustment transaction, took a conveyance of the property in question expressly subject to the original mortgage and who was not shown to have had knowledge of the adjustment transaction.    [247–250]

Upon appeal from a final decree dismissing the bill in a suit in equity, where it appeared that on the record the plaintiff was entitled to relief but that certain pertinent issues might not have been clearly raised by the pleadings or fully tried, this court merely reversed the decree and remanded the suit for further proceedings in the trial court.    [250]

THREE BILLS IN EQUITY, the first two filed in the Superior Court on October 7, 1957, and the third on January 15, 1959.

The suits were heard by *Tomasello, J.*

The cases were submitted on briefs.

*Emerson S. Searle & Socrates Geanacopoulos,* for Piea Realty Co., Inc.

*Harry M. Ehrlich & J. Leo Dowd,* for Muniak.

CUTTER, J.    In two of these cases Piea Realty Co., Inc. (Realty), pursuant to the Soldiers' and Sailors' Civil Re-

---

[1] Piea Realty Co., Inc. *vs.* Leonard L. Brunelle & others; Anthony S. Muniak *vs.* Piea Realty Co., Inc.

lief Act of 1940, seeks authority to foreclose mortgages held by it. See St. 1943, c. 57, § 1, as amended by St. 1945, c. 120. Cf. St. 1959, c. 105.[2] One mortgage covered property, owned in 1957 by Papuzynski, on Fort Pleasant Avenue, Springfield. The other covered property, on Oak Street, Springfield, owned in 1957 by Muniak. The third case is a bill by Muniak to remove as a cloud on his title to the Oak Street property a 1954 second mortgage held by Realty. By final decrees each of Realty's bills was dismissed. In the case brought by Muniak, the final decree enjoined Realty from transferring, and ordered it to discharge, the 1954 second mortgage on the Oak Street property. In each case Realty has appealed. The evidence is reported. The trial judge made a report of material facts, on the basis of which the following facts are stated.

On June 2, 1954, Realty conveyed to Leonard L. Brunelle and his wife the Fort Pleasant Avenue property subject to a first mortgage. On the same day, the Brunelles gave to Realty a demand note for $5,472.80 with interest payable monthly at the rate of five per cent per annum. The note was secured by a second mortgage. The deed and mortgage were recorded on June 3, 1954. On July 17, 1957, the Brunelles conveyed the premises to Papuzynski by a deed (on which, the original exhibit shows, there were a one dollar Massachusetts revenue stamp and a fifty-five cent Federal revenue stamp affixed) recorded September 4, 1957. The deed recited that the conveyance was subject to the first mortgage and also to the 1954 second mortgage to Realty. No interest payments have been made since April 1, 1957. No principal payments have been made at any time. The transactions with respect to the Oak Street property were substantially similar and are described in detail in the margin.[3]

---

[2] No interested person was in the military service. The effect of St. 1959, c. 105, has not been argued or considered.

[3] On January 2, 1954, Realty conveyed to the Brunelles the Oak Street property subject to a first mortgage and took back from the Brunelles a second mortgage securing a demand note for $15,737.80 with interest payable monthly at six per cent per annum. The deed was recorded on February 25, 1954, and the mortgage on November 22, 1954. On July 17, 1957, the Brunelles

On July 13, 1956, Realty's directors and stockholders voted that Realty exchange the 1954 notes "for new notes payable on or before January 2, 1959, with interest to be paid monthly at the rate of five . . . per cent per annum" and "discharge the mortgages securing . . . [the] notes and receive an [sic] exchange thereof new mortgages on the . . . properties to secure the [new] notes." Realty's clerk, a Mr. Reedy, was "authorized to execute all documents necessary to accomplish the desired results on behalf of the [c]orporation." The Brunelles executed and delivered to Mr. Reedy two new mortgages dated July 20, 1956, and two new notes of the same date, one payable on or before June 2, 1959 (despite the vote described above), and the other on or before January 2, 1959, with interest at five per cent per annum payable monthly, and in the same amounts as the 1954 notes, respectively. At the same time, Mr. Winniman, an attorney for Realty, delivered to the Brunelles (or their attorney) "the two old [1954] notes with the notation . . . 'Paid' written across their face by him and over his signature." After delivery of the new mortgages and new notes, Mr. Reedy "failed to record the new mortgages . . . and . . . discharges of the old mortgages." The judge also found that "the reason given for failing to record these instruments was that on or about July 30, 1958 . . . Brunelle filed a petition in [b]ankruptcy and . . . [Mr.] Reedy was fearful that the new mortgages would be considered as . . . a preference . . . to . . . Realty." Brunelle listed Realty in the bankruptcy proceedings as a secured creditor in the principal amounts of the notes as "possible deficiencies." At the time of the trial, each of the new 1956 notes contained a marginal notation that it was secured by a "mortgage . . . recorded in . . . [the] registry of deeds." The words "to be" before the word "recorded" in each marginal notation had been

conveyed the Oak Street property to Muniak by a deed (on which, the original exhibit shows, there were no revenue stamps affixed) recorded September 25, 1957. This deed recited that it was subject to the first mortgage and also to the 1954 second mortgage to Realty. No interest payments have been made since April 1, 1957. No principal payments have been made at any time.

inked out after "their delivery by someone other than the
. . . Brunelles."

Upon the subsidiary findings noted above and his "observations of the exhibits," the trial judge "rule[d]" (A)
that "there was a complete delivery of the new mortgages
for the old mortgages to . . . Realty"; (B) that "the old
notes . . . were paid"; (C) that "the old mortgages were
extinguished by the giving of the new mortgages and new
notes"; and (D) that "the old mortgages constitute a cloud
on the titles to . . . [the] properties." Except in minor,
immaterial respects, the trial judge's subsidiary findings
were justified by the evidence, much of which was documentary. With respect to what took place from July 13
to 20, 1956, the slight additional evidence, beyond that reflected in the subsidiary findings and the documents, is summarized below.

In July, 1956, proceedings by Realty to foreclose the
1954 mortgages were pending in the Superior Court. The
Brunelles contended that the rate of interest on one or both
of the original 1954 notes had been altered without their
consent. The presiding judge in these 1956 proceedings
either suggested or approved, and Realty and the Brunelles
agreed to, an adjustment of the interest controversy.

Mr. Winniman then prepared drafts of corporate minutes for Realty, new notes and mortgages, and papers for
the settlement of an action which had been brought by the
Brunelles against Realty. When the Brunelles' signatures
to various documents had been obtained, Mr. Winniman
handed the new notes and mortgages to Mr. Reedy. To
obtain the new notes, Mr. Winniman was required by Mr.
Burns, the Brunelles' attorney, to surrender to him the old
notes marked "paid." Mr. Burns, however, did not "make
it a condition of delivering . . . the new notes that . . .
[Mr. Winniman] deliver to him discharges of the old mortgages."

Realty's answer to Muniak's present bill to remove the
1954 mortgage on the Oak Street property as a cloud on
title stated, "At the time of the substitution of the . . .

[new] note it was agreed . . . that the new note should take the place of the old note and that the [old] mortgage should remain as security for the payment of the new note." Mr. Reedy, however, did not testify that any such agreement was made. When asked on cross-examination whether he had testified earlier that there was such an agreement, he replied, "I didn't say anything about it at all; yes or no."

The corporate minutes, drafted by Mr. Winniman, recited "that it was to the best interest of . . . [Realty] that the mortgage[s] securing . . . [the 1954] notes be destroyed and new mortgages be given to" Realty and that Realty "discharge the [1954] mortgages." Mr. Reedy explained his failure to execute the mortgage discharges by saying that Mr. Winniman "was to hold all those things [apparently the 1956 papers] until I finished checking up on the financial status of the mortgagor," and testified that he did not record the new mortgages " [b]ecause of the information . . . [he] had as to . . . [Brunelle's] financial condition."

Comparison of the 1954 and the 1956 mortgages, covering the Oak Street property, shows no material difference in their provisions other than the dates and the references to the notes secured by them respectively. The 1956 mortgage of the Fort Pleasant Avenue property was not introduced in evidence because it could not be found at the time of trial. There is no contention that it varied in any significant respect from the 1954 mortgage. Each 1956 note was in the same principal amount as the corresponding 1954 note and varied from the earlier note chiefly in the subsidiary respects noted in the margin.[4] The documents give little, if any, indication that any party intended to do more than to effect the minor changes called for by the adjust-

---

[4] (a) Each new note had a 1956 date and fixed maturity in 1959 instead of being payable on demand. (b) Interest was payable at five per cent per annum payable monthly, whereas the 1954 Oak Street note had been at six per cent. (c) The privilege of prepayment was reserved. (d) Payment of the whole principal in the event of any interest default for more than thirty days could be accelerated at the holder's option.

ment of interest and maturity dates. Any suggestion that more was intended or effected arises either (a) from Realty's corporate minutes and the form of exchange transaction in fact adopted, or (b) from the possibility that there was anxiety on the part of Realty to obtain destruction of the old notes and mortgages because of the circumstances relating to the insertion of the interest rate in one or both of the old notes.

The ambiguity of the transaction raises substantial doubt as to its effect. We must consider whether, upon the subsidiary facts found, the trial judge erred in ruling that "the old notes . . . were paid" and that "the old mortgages were extinguished." Since the evidence is reported, the scope of our review is, in any event, that stated in *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178. See *Skil Corp.* v. *Barnet,* 337 Mass. 485, 488. Cf. *Linse* v. *O'Meara,* 338 Mass. 338, 345.

There was no recital in the new notes or new mortgages that they were continuations of the security represented by the old mortgages, or that the latter were being held as additional security for the new notes. See *Kendall* v. *Bolster,* 239 Mass. 152, 155, 157. Cf. *Macomber* v. *Bremer,* 198 Mass. 20, 24–25. Indeed, the form of the transaction would indicate that the old mortgages were to be discharged. We assume that there was no affirmative oral or written agreement that the old second mortgages would remain as security for the new notes. Mr. Reedy's failure to testify that there was such an express agreement, when cross-examined on the point, is some indication that there was no such agreement.

The Brunelles' attorney testified, "at the time when the notes were given, . . . [his] clients were principally interested in the terms of the note" and not those of the mortgage. Their attention appears to have been directed to the interest rate and maturity of the note. Apart from the form of the corporate minutes and documents already mentioned, we see no basis for any inference that the parties had any affirmative intention to change the substance of

any other aspect[5] of the Brunelles' existing indebtedness to Realty, or the priority of the security therefor.

"The payment of the mortgage note . . . terminates the interests of the mortgagee without any formal . . . discharge and revests the legal title in the mortgagor. . . . Upon the fulfilment of the conditions of the mortgage, the mortgagor is entitled to the note and a discharge of the mortgage in order to remove a cloud upon the record title . . . ." See *Pineo* v. *White,* 320 Mass. 487, 489. There is a "presumption . . . that the giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded. While that presumption is rebutted where it appears that thereby the security held for the original debt will be released, nevertheless it is ordinarily a question of fact whether such a result follows." See *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73; *Dow* v. *Poore,* 272 Mass. 223, 227–228. See also *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 161; *Saulenas* v. *Penn,* 287 Mass. 409, 412; *Rosenberg* v. *Robbins,* 289 Mass. 402, 410. Cf. *Pearson* v. *Mulloney,* 289 Mass. 508, 515; *Hart* v. *Louis S. Levi Co.* 303 Mass. 477, 478–479. Equitable considerations, however, may affect the questions whether mortgage security has been discharged or (if discharged) will be reinstated and whether, by subrogation or upon analogous principles, it still remains available to a mortgage creditor. See *Worcester No. Sav. Inst.* v. *Farwell,* 292 Mass. 568, 574; *North Easton Co-op. Bank* v. *MacLean,* 300 Mass. 285, 292. See also *Pearson* v. *Mulloney,* 289 Mass. 508, 515–516; *Hill* v. *Wiley,* 295 Mass. 396, 406; *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158, 161–163; *Indemnity Ins. Co.* v. *Paige,* 299 Mass. 523, 527–528; *United States* v. *Jane B. Corp.* 167 F. Supp. 352, 357 (D. Mass.); Restatement: Restitution, §§ 162, 171; Sheldon, Subrogation (2d ed.) §§ 6, 8, 11, 20,

---

[5] Muniak contends that, because the new 1956 note covering the Oak Street property was in precisely the same amount as the old 1954 note ($15,737.80), Realty in effect waived unpaid overdue interest on the old note. This may have been intended as an adjustment of the allegedly excessive rate of interest on the old note. In any event this alteration did not operate to the disadvantage of Muniak.

43, 44; Jones, Mortgages (8th ed.) §§ 1111–1119; Tiffany, Real Property (3d ed.) § 1507; Am. Law of Property, §§ 16.149–16.152; Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 497, 498, 558, 561. Cf. *Supraner* v. *Citizens Sav. Bank,* 303 Mass. 460, 465–466; *Gleason* v. *Dorney,* 332 Mass. 646, 648; *Morad* v. *Silva,* 334 Mass. 18, 22. Cf. also *Childs* v. *Stoddard,* 130 Mass. 110, 112; *Houle* v. *Vallieres,* 281 Mass. 123, 125.

The question for decision is whether Realty, because of the form of the transaction adopted to carry out the 1956 modification of the 1954 notes, must now rely solely upon the new 1956 mortgages, even though it has not delivered or recorded discharges of the 1954 mortgages. Because of its delay in recording the 1956 mortgages, Realty may now be unable to enforce them as against Muniak and Papuzynski and perhaps others as well, if it is held that it must discharge the 1954 mortgages. Indeed, even if the 1956 second mortgages and discharges of the 1954 mortgages had been promptly and simultaneously recorded in July, 1956, Realty might have been confronted with junior lienors and other third persons asserting claims alleged to be senior to the new 1956 second mortgages although junior to the discharged 1954 second mortgages.

Realty's delay in recording the 1956 mortgages and the discharges of the 1954 mortgages seems to have been prompted by doubts on Mr. Reedy's part, arising after Mr. Winniman had surrendered the 1954 notes to the Brunelles' attorney, about Realty's ability to preserve the relative priority of its mortgage lien if the execution and recording of the discharges of the 1954 mortgages proceeded as originally planned. Although it should have been realized that such discharges were contemplated in carrying out the transactions, the officers of Realty merely delayed recording the 1956 papers. More appropriately, they should have proceeded immediately and directly to obtain, by reformation of the 1956 instruments and by court proceedings if necessary, a suitable adjustment of the form of the 1956 transactions which would clearly continue the 1954 mort-

gages in force, both on the record and as a matter of the arrangements between Realty and the Brunelles.

We conclude, contrary to the trial judge's conclusions, that the substance of the intention of the parties in entering into the 1956 transactions was to change the terms of the notes but to make no change in Realty's relative security. Because of failure to recognize various dangers, the parties by inadvertence or mistake adopted a form of transaction in 1956 which might not carry out this intention in the light of the risks of intervening claims. See *Reggio* v. *Warren,* 207 Mass. 525, 533–538; *Franz* v. *Franz,* 308 Mass. 262, 266–267; Williston, Contracts (Rev. ed.) §§ 1586–1589; Corbin, Contracts, §§ 616, 619–620. See also *Falk* v. *Levine,* 60 F. Supp. 660, 663 (D. Mass.).

There is no occasion to consider whether, if Realty had executed and recorded discharges of the 1954 mortgages, these mortgages could now be reinstated to avoid unjust enrichment. See *North Easton Co-op. Bank* v. *MacLean,* 300 Mass. 285, 292, and cases cited. The 1954 mortgages have not been discharged of record. If they are not discharged of record, the situation will be consistent with the parties' substantive (as opposed to formal) expectations. As between Realty and the Brunelles, Realty in equity should retain the security which was afforded by the 1954 mortgages and which the 1956 mortgages were designed to continue.

Muniak and Papuzynski, by the deeds of July 17, 1957, from the Brunelles, each took title (see *Grimes* v. *Kimball,* 8 Allen, 153, 157) expressly subject to the 1954 mortgage on the lot which he purchased. They also took subject to an attachment for $20,000 made by one Stratos. The record does not show what has happened to that attachment. Stratos, although shown by the dockets to have been an additional defendant in the proceedings started by Realty, does not seem to have participated actively in them. Mr. Turner, attorney for Muniak and Papuzynski, during the period when the properties were acquired, testified that he had been told by his clients that "there were two notes that had been executed with an original mortgage and subse-

quent thereto there had been an agreement to change the interest and new notes were executed, and they didn't think they should pay off the present mortgage unless those notes were produced.'' Mr. Turner placed this conversation in November, 1957, which was after the deeds from the Brunelles to Papuzynski and Muniak had been recorded. At some time, also, Papuzynski had some talk with Mr. Reedy about the notes, but the content of the talk does not clearly appear in the record. Mr. Reedy testified that in February, 1958, he had negotiations with Papuzynski and Muniak about paying off or taking an assignment of the mortgage, but these negotiations appear to have broken down when Mr. Reedy could not produce the 1954 notes. Muniak and Papuzynski did not testify. The evidence just summarized does not justify the conclusion that Muniak and Papuzynski had knowledge of the 1956 transactions before they took title or that they have changed position in any way in reliance on those transactions or upon any understanding that the 1956 notes had discharged the indebtedness represented by the 1954 notes and had caused a discharge of the 1954 mortgages.

The 1956 notes did not increase the indebtedness secured by the 1954 mortgages or in any manner reduce the amount of the mortgagor's equity. So far as appears from this record, Muniak and Papuzynski each will get ''just what . . . [he] bargained for if . . . held to take subject to'' the 1954 mortgage. See *Pearson* v. *Mulloney,* 289 Mass. 508, 515. Cf. *Hart* v. *Louis S. Levi Co.* 303 Mass. 477, 479. Indeed, it is not clear to what extent either Muniak or Papuzynski was a purchaser for value.[6] Each of them, so far as appears, would be unjustly enriched (cf. *Pecker* v. *Silsby,* 123 Mass. 108, 110; cf. also *Eaton* v. *Tuson,* 145 Mass. 218, 221; *Everett* v. *Gately,* 183 Mass. 503, 505) if it should now be held that the 1954 mortgages must be discharged, and that they, respectively, purchased from the

---

[6] The absence of revenue stamps on the Brunelles' deed to Muniak suggests that he paid no consideration. The fifty-five cent revenue stamp on the Brunelles' deed to Papuzynski indicates that the conveyance to him was for a consideration so small as to permit an inference that the price was for the equity of redemption after taking into account Realty's second mortgage interest.

Brunelles free of any lien of the unrecorded 1956 mortgages to Realty. The record shows no inequity to Muniak or Papuzynski if the 1954 mortgages are left undischarged.

In a supplemental brief, Muniak argues that the conduct of representatives of Realty should bar it from any equitable relief. The evidence and the subsidiary findings of the trial judge do not disclose misconduct with respect to the mortgage security or delay in enforcing it which should operate to deny Realty equitable relief.

Upon the present record Realty, against the Brunelles and against Muniak and Papuzynski, respectively, should have decrees authorizing it to foreclose the 1954 mortgages, upon affording suitable protection against assertion of rights under the 1956 mortgages. Muniak has not established that he is now entitled to have the 1954 mortgage on his property discharged as a cloud on his title. It is not clear, however, that the case was fully tried upon the issues of whether Muniak and Papuzynski, respectively, before they took title had notice of the 1956 transactions and whether they were purchasers for value who had changed position in reliance upon the form of the 1956 transactions. It is also not clear that the trial judge took into account equitable considerations, similar to those dealt with in the *North Easton Co-op. Bank* case, 300 Mass. 285, 292, and cases cited. Although the issues just mentioned seem to be presented at least by implication by the pleadings in the case brought by Muniak, they are not very plainly presented in the pleadings in the proceedings initiated by Realty. In the circumstances, we merely reverse the decrees and remand the cases to the Superior Court, thus permitting the trial judge to allow amendment of the pleadings, and to take further evidence, if he deems that appropriate, in order to afford complete equitable relief. See *Atlantic Natl. Bank* v. *Hupp Motor Car Corp.* 300 Mass. 196, 202–203; *McDade* v. *Moynihan,* 330 Mass. 437, 443–445.

The decrees are reversed. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*