NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11756

DEUTSCHE BANK NATIONAL TRUST COMPANY, trustee,[1] vs. FITCHBURG CAPITAL, LLC, & others.[2]


Suffolk.     January 5, 2015. - April 15, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Mortgage, Real estate, Discharge, Foreclosure, Dragnet clause. Real Property, Mortgage.  Limitations, Statute of. Practice, Civil, Summary judgment, Statute of limitations. Statute, Retroactive application, Construction.  Due Process of Law, Retroactive application of statute, Statute of limitations.  Constitutional Law, Contract clause.


Civil action commenced in the Land Court Department on July 2, 2012.

A motion for partial summary judgment was heard by Robert B. Foster, J., and entry of separate and final judgment was ordered by him.

_____

[1] Of Ameriquest Mortgage Securities, Inc., Asset-backed Pass-through Certificates, Series 2004-R11 under the Pooling and Service Agreement dated as of December 1, 2004.

[2] Lee Bourque; Federal National Mortgage Association; and John Burdick, trustee of the bankruptcy estate of Bernard Saulnier.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Jeffrey T. Angley (Robert K. Hopkins with him) for Fitchburg Capital, LLC.
Jeffrey B. Loeb for the plaintiff.
Thomas O. Moriarty, for Real Estate Bar Association for Massachusetts, Inc., & another, amici curiae, submitted a brief.
Philip F. Coppinger, for Ry-Co International, Ltd., amicus curiae, submitted a brief.

HINES, J.  Under a 2006 amendment to the so-called "obsolete mortgage" statute, a mortgage becomes unenforceable after a certain number of years:  a mortgage in which the term or maturity date is stated becomes unenforceable five years after the expiration of the term and a mortgage in which the term or maturity date is not stated becomes unenforceable thirty-five years after recording.[3]  G. L. c. 260, § 33, as amended by St. 2006, c. 63, § 6.  The defendant Fitchburg Capital, LLC (Fitchburg), foreclosed on two mortgages at a time when both mortgages would be unenforceable under the amended statute if the five-year statute of limitations was applicable. In this appeal, we interpret the amended statute to determine whether a mortgage stating only the term or maturity date of the underlying debt is a "mortgage in which the term or maturity date of the mortgage is stated" under G. L. c. 260, § 33, and

---

[3] The limitations periods may be extended by recording an extension or an affidavit or acknowledgment of nonpayment. G. L. c. 260, §§ 33-34.

whether the retroactive application of § 33 to mortgages recorded before the effective date of the amendment is constitutional.

The plaintiff, Deutsche Bank National Trust Company, as trustee of Ameriquest Mortgage Securities, Inc., Asset-backed Pass-through Certificates, Series 2004-R11 under the Pooling and Servicing Agreement dated as of December 1, 2004 (Deutsche Bank), filed a motion for partial summary judgment seeking a declaration that the mortgages are discharged under the obsolete mortgage statute and the foreclosure auction conducted on the property securing those mortgages is null and void.[4]  In a well-reasoned opinion, a Land Court judge granted partial summary judgment for Deutsche Bank, concluding that reference in the mortgages to the term of the underlying debt was sufficient to state the "term or maturity date of the mortgage"; that the mortgages became obsolete pursuant to G. L. c. 260, § 33; and,

_____

[4] Deutsche Bank National Trust Company, as trustee of Ameriquest Mortgage Securities, Inc., Asset-backed Pass-through Certificates, Series 2004-R11 under the Pooling and Servicing Agreement dated as of December 1, 2004 (Deutsche Bank), also sought summary judgment on its equitable subrogation claim, arguing that the mortgages held by Fitchburg Capital, LLC (Fitchburg), should be equitably subordinated to the mortgage held by Deutsche Bank because the Fitchburg mortgages were junior liens when granted and that the priority liens were paid off from proceeds from loans from Deutsche Bank's predecessors in title.  Because of his conclusion that the mortgages were discharged, the judge did not reach Deutsche Bank's equitable subrogation claim.  We affirm and therefore decline to reach Deutsche Bank's equitable subrogation claim.

therefore, that the foreclosure sale conducted by Fitchburg was null and void. The judge rejected Fitchburg's constitutional challenge to the statute. We transferred Fitchburg's appeal to this court on our own motion and now affirm.[5]

1. Background. The following facts, viewed in the light most favorable to the nonmoving party, are drawn from the summary judgment record. On or about April 30, 2012, Fitchburg conducted a foreclosure auction purporting to sell a property located at 11 Nutting Street, Fitchburg (property). Lee Bourque, a defendant, held record title to the property at all relevant times.

At the time of the purported foreclosure sale, Fitchburg held two mortgages secured by the property: (1) a mortgage dated April 13, 1999, from Lee Bourque to John Christiano, recorded May 14, 1999 (Christiano mortgage);[6] and (2) a mortgage dated December 16, 2002, from Lee Bourque to Bourque Development

---

[5] We acknowledge the amicus brief submitted by Real Estate Bar Association for Massachusetts, Inc., and Abstract Club; and by Ry-Co International, Ltd.

[6] The Christiano mortgage states, "Lee Bourque . . . grant[s] to John Christiano . . . with mortgage covenants, to secure the payment of $9,722.00 . . . in one year with twenty percent interest per annum, payable in one year . . . , as provided in the promissory note of even date, the [property]."

Corp., recorded December 18, 2002 (BDC mortgage).[7]  There is no evidence that any party recorded an extension for either mortgage, an acknowledgement or affidavit that either of the mortgages was not satisfied, or a discharge of either mortgage. The original mortgagee assigned the BDC mortgage to Fitchburg by agreement dated March 19, 2010.  The Christiano mortgage was assigned to Fitchburg on August 5, 2011, by the then-current holder and prior assignee, the estate of Jack Rosenblit.

The obligation underlying the Christiano mortgage is a note dated April 13, 1999, with a maturity date of May 1, 2000.  The only obligation indicated in the record as underlying the BDC mortgage is a note dated December 16, 2002, with a maturity date of December 31, 2003.  Fitchburg asserts that the maturity date of the loan underlying the BDC mortgage was extended to December 1, 2007, but the agreement extending the note was never recorded.

---

[7] The BDC mortgage states:

"Lee Bourque . . . the 'Mortgagor' . . . HEREBY GRANTS to Bourque Development Corporation . . . with MORTGAGE COVENANTS, to secure the payment of . . . $88,958.65 . . . with interest thereon, as provided in the Mortgagor's note of even date, . . . and all other debts, covenants and agreements of or by the Mortgagor to or for the benefit of the Mortgagee now existing or hereafter accruing while this mortgage is still undischarged of record, [the property and other properties not at issue here].  Mortgagor has promised to pay the debt under this note in full not later than December 31, 2003."

Deutsche Bank holds a mortgage dated September 10, 2004, granted by Lee Bourque to Ameriquest Mortgage Company and recorded October 1, 2004 (Ameriquest mortgage). The mortgage was assigned to Deutsche Bank by agreement dated March 5, 2007.

On April 20, 2011, Lee Bourque filed a Chapter 13 petition for bankruptcy, which was later converted to Chapter 7. During bankruptcy proceedings, the parties discussed the relative priority of the mortgages and Deutsche Bank's counsel represented to Fitchburg's counsel that Fitchburg's mortgages held first and second priority on the property and that Deutsche Bank's mortgage was third priority. On September 26, 2011, Deutsche Bank filed a motion for relief from automatic stay to allow it to commence foreclosure proceedings, which acknowledged Fitchburg's first and second priority positions. Fitchburg did not oppose the motion, and asserts that it did not oppose because of the acknowledgment in the motion and conversation with Deutsche Bank's counsel in which the counsel recognized Fitchburg's first and second priority positions. On October 24, 2011, Fitchburg filed a motion for relief from automatic stay to allow it to commence foreclosure proceedings, which was granted on February 21, 2012. Fitchburg conducted an auction purporting to foreclose on the property on April 30, 2012. Fitchburg was the high bidder at the auction and recorded a foreclosure deed purporting to grant fee simple title to itself on that date.

2.  Statutory background.  The obsolete mortgage statute was enacted in 1957 to create a statute of limitations on foreclosures against mortgages that had been recorded for fifty years or more, unless either an extension or a document asserting nonsatisfaction of the mortgage was recorded in the ten years preceding the end of the fifty-year period.  G. L. c. 260, § 33, inserted by St. 1957, c. 370.  In 2006, the statute was amended to create two different limitations periods, one for any "mortgage in which the term or maturity date of the mortgage is stated" and one for any "mortgage in which no term of the mortgage is stated."  G. L. c. 260, § 33, as amended by St. 2006, c. 63, § 6.  The limitations period for stated term mortgages is five years after expiration of the term or maturity date, and the limitations period for nonstated term mortgages is thirty-five years from the recording of the mortgage.[8]  Id.  The

_____

[8] General Laws c. 260, § 33, as amended by St. 2006, c. 63, § 6, provides as follows:

"A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of, in the case of a mortgage in which no term of the mortgage is stated, [thirty-five] years from the recording of the mortgage or, in the case of a mortgage in which the term or maturity date of the mortgage is stated, [five] years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.  In case an extension of the mortgage or the acknowledgment or affidavit is so recorded,

amended statute allows enforcement of the mortgage if an extension or a document asserting nonsatisfaction of the mortgage had been recorded, but reduced the ten-year period in the prior statute to five years.  Id.  The amended statute also became self-executing so that any mortgage rendered obsolete by the terms of the statute is discharged without further legal action.  Id.

3.  Standard of review.  We review a grant of summary judgment de novo.  Twomey v. Middleborough, 468 Mass. 260, 267 (2014), citing Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 215 (2003).  "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  Twomey, supra, citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716

---

the period shall continue until [five] years shall have elapsed during which there is not recorded any further extension of the mortgage or acknowledgment or affidavit that the mortgage is not satisfied.  The period shall not be extended by reason of non-residence or disability of any person interested in the mortgage or the real estate, or by any partial payment, agreement, extension, acknowledgment, affidavit or other action not meeting the requirements of this section and [G. L. c. 260, §§] 34 and 35.  Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property and, in the case of registered land, upon the payment of the fee for the recording of a discharge, the mortgage shall be marked as discharged on the relevant memorandum of encumbrances in the same manner as for any other mortgage duly discharged."

(1991).  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

4.  Limitations period applicable to Fitchburg's foreclosure under obsolete mortgage statute.  The judge allowed partial summary judgment in favor of Deutsche Bank after concluding that Fitchburg's purported foreclosure was void because the BDC and Christiano mortgages had been discharged as a matter of law before foreclosure.[9]  Although neither mortgage expressly contained the "term or maturity date" of the mortgage itself, the judge reasoned that "the dates and terms [of the underlying debt] set forth in the Christiano Mortgage and the BDC Mortgage are statements of 'the term or maturity date of the mortgage' that make these two mortgages subject to the five-year period."  We agree.

We answer the question presented by applying well-settled rules of statutory construction.  When the meaning of a statute is at issue, "[w]e begin with the canon of statutory construction that the primary source of insight into the intent of the Legislature is the language of the statute."

---

[9] We assume without deciding that Fitchburg invoked its rights under both the BDC and Christiano mortgages.  The foreclosure deed recorded by Fitchburg stated that it foreclosed on the property under the powers granted to it by the BDC mortgage and "every other power."  The resolution of this question is not pertinent to the issue on appeal because both the BDC mortgage and the Christiano mortgage were discharged as a matter of law prior to Fitchburg's purported foreclosure.

International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). The language is interpreted in accordance with its plain meaning, and if the language is clear and unambiguous, it is conclusive as to the intent of the Legislature. Commissioner of Correction v. Superior Ct. Dep't of the Trial Court, 446 Mass. 123, 124 (2006), citing Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. 352, 355-356 (2003).

When interpreting the phrase, "mortgage in which the term or maturity date of the mortgage is stated," that triggers the five-year statute of limitations, "[w]ords and phrases shall be construed according to the common and approved usage of the language." G. L. c. 4, § 6, Third. According to Black's Law Dictionary 478, 1163 (10th ed. 2014), "maturity date" means "[t]he date when a debt falls due, such as a debt on a promissory note or bond," and "mortgage" means "[a] conveyance of title to property that is given as security for the payment of a debt or performance of a duty and that will become void upon payment or performance according to the stipulated terms." Thus, the common meaning of the "maturity date of the mortgage" is the date on which the underlying debt is due because a mortgage derives its vitality from the debt that it secures.

This definition comports with the treatment of mortgages under our common-law principles. Although a mortgage and a note

are separate entities in Massachusetts that can be split, it has long been recognized that "a mortgage ultimately depends on the underlying debt for its enforceability." Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 576, 578 n.11 (2012), citing Crowley v. Adams, 226 Mass. 582, 585 (1917), Wolcott v. Winchester, 15 Gray 461 (1860), and Howe v. Wilder, 11 Gray 267, 269-270 (1858). By its nature, a mortgage does not mature distinctly from the debts or obligations that it secures. See Eaton, supra at 577-578 ("the basic nature of a mortgage [is] security for an underlying mortgage note"); Barnes v. Lee Sav. Bank, 340 Mass. 87, 90 (1959) ("The debt having been extinguished, a bond or mortgage given as security for the debt is necessarily discharged"). Accordingly, a mortgage is a device for providing security for a loan, but it does not generally have a binding effect that survives its underlying obligation.[10] See Piea Realty Co. v. Papuzynski, 342 Mass. 240, 246 (1961), quoting Pineo v. White, 320 Mass. 487, 489 (1946) (unless other equitable considerations apply, "payment of the mortgage note . . . terminates the interests of the mortgagee without any formal

---

[10] "Equitable considerations . . . may affect the questions whether mortgage security has been discharged or (if discharged) will be reinstated and whether, by subrogation or upon analogous principles, it still remains available to a mortgage creditor." Piea Realty Co. v. Papuzynski, 342 Mass. 240, 246, 250 (1961) (remanding for consideration whether principles of unjust enrichment or other equitable considerations should reestablish mortgage otherwise discharged by parties).

. . . discharge and revests the legal title in the mortgagor"). Therefore, the judge's interpretation of the statute corresponds to the plain meaning of the language chosen by the Legislature.

Fitchburg argues that the judge's interpretation conflicts with the language of the statute by citing the definition of "mortgage" provided in G. L. c. 260, § 35. Under this provision, a "mortgage," for the purposes of the obsolete mortgage statute, "includes any deed of trust or other conveyance made for the purpose of securing performance of a debt or obligation." G. L. c. 260, § 35. Fitchburg argues that the definition in § 35 requires that the applicable maturity date be tied directly to the mortgage and not to the underlying obligation. Fitchburg also cites language in Eaton, 462 Mass. at 575, "A real estate mortgage in Massachusetts has two distinct but related aspects: it is a transfer of legal title to the mortgage property, and it serves as security for an underlying note or other obligation," to support its argument that the maturity date of the note may not be exported to the mortgage because a mortgage and a note each have separate legal significance in Massachusetts. Fitchburg's argument is unavailing for several reasons.

The flaw in Fitchburg's argument is the misconception that considering the maturity date of the note to be the maturity date of the mortgage requires the note and the mortgage to lose

any independent properties.  The question, rather, is whether the term or maturity date of the underlying obligation is commonly understood as the term or maturity date of the mortgage when that date is stated on the face of the mortgage.  To this question, the definition in § 35 is unhelpful.  Not only is the definition inclusive instead of limiting, it only sets forth the types of security applicable to the obsolete mortgage statute; it does not define the particularities of a mortgage's provisions.  See G. L. c. 260, §§ 33-35.  Moreover, we noted in Eaton that the "essential nature and purpose of a mortgage [i]s security for a debt."  Eaton, 462 Mass. at 584.  As noted above, because the scope of a mortgage is necessarily tied to the reach of the underlying obligation, considering the term or maturity date of the underlying obligation to be the term or maturity date of the mortgage comports with the common-law understanding of the words "mortgage" and "note."  See Barnes, 340 Mass. at 90.

Fitchburg also argues that the judge's interpretation was erroneous because the title of the act modifying the statute, "An Act providing remedies to consumers for clearing title after payoff of mortgages," signifies that the Legislature only intended the five-year limitations period to apply to mortgages where the underlying obligations have been paid in full.  St. 2006, c. 63.  The title of the act, however, is ineffective

to modify the language of the statute because that language is clear. "Although we have recognized that the title of an act or statutory provision may be helpful in clarifying ambiguity, . . . or identifying the act's 'proper limitations,' . . . the title may not replace or limit otherwise clear language in the act itself" (citations omitted). Olmstead v. Department of Telecommunications & Cable, 466 Mass. 582, 589 n.12 (2013). Because the ordinary meaning of "term or maturity date of the mortgage" is clear based on common usage of that language, the title of the act cannot control. American Family Life Assur. Co. v. Commissioner of Ins., 388 Mass. 468, 474, cert. denied, 464 U.S. 850 (1983) ("title of an act cannot control the plain provisions of the act"). Even if we took the title into account, the language of the title comports with the common usage of mortgage and note. The Legislature chose the words, "after payoff of mortgages," for the title. However, a mortgage cannot be paid off; only its underlying obligation can be paid off. Accordingly, the Legislature referred to the mortgage in the title as possessing characteristics of underlying obligations similar to the phrase, "maturity date of the mortgage," used in the statute.

Furthermore, although our conclusion yields a workable result and thus ends our inquiry, review of the entire act that modifies the obsolete mortgage statute would not provide a

contrary result.  Thurdin v. SEI Boston, LLC, 452 Mass. 436, 454 (2008), quoting Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984) ("When the use of the ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history").  The revisions to the obsolete mortgage statute were contained within an act comprising nine sections and affecting multiple statutes.[11] Although the title references mortgages "after payoff," review of the entire act demonstrates an over-all scheme to streamline conveyancing and provide remedies to clear title blemished by mortgages in various levels of standing, including mortgages whose obligations have been satisfied, St. 2006, c. 63, §§ 2-4; mortgages granted by mortgagors who have been in possession of the secured property for a specified period without recognizing the mortgage as valid, St. 2006, c. 63, § 5; and mortgages that have become obsolete, St. 2006, c. 63, §§ 6-7.[12]  Accordingly,

---

[11] A search of legislative history has not produced any detailed official purpose of St. 2006, c. 63 (act), or its various sections.

[12] Sections 2, 3, and 4 of the act expanded the statutes regulating mortgage discharges, G. L. c. 183, §§ 54B, 54C, 54D, and 55, and provided specific timeframes in which a discharge must be recorded after payoff.  Sections 4A and 4B of the act updated the disclosures required during the mortgage application process by amending G. L. c. 184, § 17B, and repealing §§ 17C and 17D.  Section 5 of the act amended the statute governing actions to quiet title, G. L. c. 240, § 15, and provides additional avenues for discharging a mortgage when the underlying obligation has been satisfied or when a mortgagor

although the Legislature used the words "after payoff" in the title of the act, it is clear from review of the entire act that the Legislature did not intend to limit all changes in the act to affect only mortgages where the underlying obligations had been paid off or satisfied.

In that regard, Fitchburg does not argue that applicability of the revised limitations period for mortgages in which the term is not stated depends on satisfaction of the underlying obligations. The obsolete mortgage statute created a limitations period for bringing foreclosure actions against mortgages. G. L. c. 260, § 33. Under the amendment, the statute requires the holder of a mortgage to foreclose on the mortgage, record a document asserting nonsatisfaction, or record an extension before the mortgage has been on record for thirty-five years or before the secured debt is overdue by five years (and the due date is stated on the face of the mortgage). See St. 2006, c. 63, § 6. The statute has never been interpreted to require satisfaction of a mortgage's underlying obligations before the mortgage becomes unenforceable. Conversely, the statute provides a mortgagee options to preserve its rights under a mortgage that has not been satisfied by recording an acknowledgment or affidavit asserting nonsatisfaction, or by

---

claims that the mortgage is invalid and that claim is not contested.

recording an extension of term. G. L. c. 260, § 33, as amended by St. 2006, c. 63, § 6. Discharge under the obsolete mortgage statute has never rested on satisfaction of a mortgage's underlying obligations, and we decline to adopt a contrary position today.

Determining that the term or maturity date of an underlying obligation, when stated on the face of the mortgage, can become the term or maturity date of the mortgage does not end our inquiry. We must still review the actual language used in the Christiano and BDC mortgages. The BDC mortgage states, "Mortgagor has promised to pay the debt under this note in full not later than December 31, 2003," and the Christiano mortgage, dated April 13, 1999, states that the mortgage is granted to "secure the payment of $9,722.00 . . . in one year with twenty percent interest per annum, payable in one year . . . as provided in the promissory note of even date." Based on the reasoning above, we read the quoted language in each mortgage to state the term or maturity date of that mortgage, making each subject to the five-year statute of limitations.

Beyond the language quoted above, the BDC mortgage also contains a dragnet clause, in which "all other debts, covenants and agreements of or by the Mortgagor to or for the benefit of the Mortgagee now existing or hereafter accruing while this mortgage is still undischarged of record" become secured by the

mortgage in addition to the original underlying obligation. Dragnet clauses are mortgage provisions that provide security for future advances and "are usually held valid in Massachusetts, at least where such advances are made prior to the intervention of other liens." Everett Credit Union v. Allied Ambulance Servs., Inc., 12 Mass. App. Ct. 343, 346 (1981), citing Barnard v. Moore, 8 Allen 273, 274 (1864). Fitchburg argues that the presence of the dragnet clause indicates that the parties intended the BDC mortgage to outlive the underlying note for an indefinite duration. This argument, however, conflicts with the nature of a mortgage as being tied to the life of its underlying obligations. See Piea Realty Co., 342 Mass. at 246; Barnes, 340 Mass. at 90. Although Fitchburg asserts a pattern of frequent lending between the original mortgagee of the BDC mortgage and the mortgagor that culminated in the creation of the BDC mortgage,[13] Fitchburg does not assert the presence of any debts incurred after the date of the BDC mortgage that would have been secured under its dragnet clause, and thus possibly extend the term of the mortgage beyond the term of the original note. Without holding that a dragnet

---

[13] The mortgagor, Lee Bourque, is the brother of the principal of Bourque Development Corporation and of Fitchburg, Paul Bourque. Paul, through his company, made a series of loans to his brother to be used in real estate development activities. These loans culminated in the BDC mortgage.

clause may never extend the term or maturity date of a mortgage, we conclude that the dragnet clause here did not extend the term of the BDC mortgage or take that mortgage out of the realm of mortgages in which the term is stated.[14]

5. <u>Constitutionality of retroactive application of limitations period</u>. After determining that the Christiano and BDC mortgages were discharged under the obsolete mortgage statute, the judge rejected Fitchburg's constitutional challenge to the retroactive application of the shortened statute of limitations, reasoning that there were no constitutional infirmities where the Legislature allowed sufficient time after enacting St. 2006, c. 63, § 6, for affected parties to bring a foreclosure and where G. L. c. 260, § 33, as amended, does not totally abrogate existing property rights. Fitchburg argues that, assuming we agree that the judge correctly interpreted the obsolete mortgage statute, we must reverse because the application of the statute in this case violates due process and

---

[14] Under Massachusetts case law, the dragnet clause would only have provided security for new debt incurred before the presence of an intervening lien. <u>Debral Realty, Inc</u>. v. <u>Marlborough Coop. Bank</u>, 48 Mass. App. Ct. 92, 94 (1999). In this case, the next lien following the BDC mortgage was incurred April 13, 2004. Accordingly, even if the dragnet clause were operative to extend the term of the mortgage separate from the term of the original note, the dragnet clause would only extend the mortgage's maturity date from December 31, 2003, to April 13, 2004, and the five-year statute of limitations would still have expired before Fitchburg's purported foreclosure sale on April 30, 2012.

contracts clause protections under the Massachusetts and Federal Constitutions.  In that connection, Fitchburg argues that retroactive application of the five-year limitations period to the BDC and Christiano mortgages is unreasonable and unconstitutional.

"There are constitutional limitations on the Legislature's power to enact retroactive statutes -- in brief, such statutes must 'meet the test of "reasonableness."'"  Anderson v. BNY Mellon, N.A., 463 Mass. 299, 307 (2012), quoting American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 189 (1978).  "A statute is presumed to be constitutional and every rational presumption in favor of the statute's validity is made."  Pielech v. Massasoit Greyhound, Inc., 441 Mass. 188, 193 (2004), citing Leibovich v. Antonellis, 410 Mass. 568, 577 (1991).  The challenging party bears the burden to prove that the statute is irrational in its application.  Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 788 (2008).  Where the applicable statute is one affecting a limitations period, a "shortened statute of limitations may be applied to causes of action already accrued 'if sufficient time be allowed, between the passing of the act and the time fixed for the limitation, to afford a full and ample time to all persons, having such causes of action, to commence their

suits.'" <u>Cioffi</u> v. <u>Guenther</u>, 374 Mass. 1, 3 (1977), quoting <u>Loring</u> v. <u>Alline</u>, 9 Cush. 68, 71 (1851).

Here, the act revising the obsolete mortgage statute was approved April 13, 2006, and the Legislature extended the effective date of the operative section until October 1, 2006.[15] St. 2006, c. 63, §§ 6, 9. Accordingly, the Legislature determined that five and one-half months was a reasonable time for mortgagees to enforce their rights under mortgages that would be deemed obsolete under the revised statute or to record one of the other documents permitted by statute to preserve the mortgagee's rights.[16] G. L. c. 260, §§ 33-34. We have considered shorter periods of time before the effective date of a shortened statute of limitations to be reasonable. See, e.g., <u>Cunningham</u> v. <u>Commonwealth</u>, 278 Mass. 343, 346 (1932); <u>Mulvey</u> v. <u>Boston</u>, 197 Mass. 178, 183-185 (1908) (thirty days). See also <u>Evans</u> v. <u>Building Inspector of Peabody</u>, 5 Mass. App. Ct. 805, 805-806 (1977) (ninety days).

---

[15] The Legislature provided an additional extension for enforceability of mortgages affected by §§ 5 and 6 of the act, where the term would expire during the one year following the effective date, so that those mortgages would be enforceable through October 1, 2007. St. 2006, c. 63, § 8.

[16] As previously noted, a mortgagee may record an extension or affidavit or acknowledgment that the underlying obligation has not been satisfied in order to extend the time before a mortgage is deemed obsolete under G. L. c. 260, § 33.

We conclude that the period of five and one-half months provided by the Legislature is reasonable in light of the fact that a mortgagee is provided other options under the statute, other than commencing foreclosure, to extend its rights under a mortgage. "What shall be considered a reasonable time must be settled by the judgment of the Legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice." Mulvey, 197 Mass. at 183, quoting Wilson v. Iseminger, 185 U.S. 55, 63 (1902). Fitchburg contends that the statute is a denial of justice as it applies to its mortgages, both commercial in nature, with unsatisfied underlying obligations and an unrecorded extension agreement. While this contention has some force, it should be addressed to the Legislature, because the time allotted by the Legislature for mortgagees to preserve their rights makes retroactive application of the 2006 amendment constitutional. See Cioffi, 374 Mass. at 4. There is no denial of justice in this case because Fitchburg was entitled to record an extension or an affidavit or acknowledgment that the underlying obligation had not been satisfied in order to extend the time before its mortgages were deemed obsolete under G. L. c. 260, § 33. Fitchburg's failure to follow these clear

directives does not make the statute unconstitutional.  <u>Cioffi</u>, <u>supra</u>.

6.  <u>Conclusion</u>.  The order allowing in part Deutsche Bank's motion for partial summary judgment is affirmed.

<u>So ordered</u>.