NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-542                                          Appeals Court

KIMBERLY J. DORSEY  vs.  PAUL W. RATHBUN.

No. 22-P-542.

Plymouth.     January 18, 2023. – May 12, 2023.

Present:  Sullivan, Shin, & Hodgens, JJ.

Mortgage, Real estate.  Real Property, Mortgage.  Negotiable
    Instruments, Note, Defenses.  Limitations, Statute of.
    Uniform Commercial Code, Payment on negotiable instrument.
    Judicial Estoppel.  Practice, Civil, Case stated.

Civil action commenced in the Superior Court Department on
July 1, 2016.

The case was heard by Gregg J. Pasquale, J., on a case
stated.

Matthew J. Costa for the defendant.
James P. Devlin for the plaintiff.

SHIN, J.  At issue is whether the plaintiff's claims to

recover on a promissory note are barred by the Uniform

Commercial Code's (UCC) statute of limitations governing actions

to enforce negotiable instruments -- in particular, the six-year

statute of limitations for "action[s] to enforce the obligation

of a party to pay a note payable at a definite time." G. L. c. 106, § 3-118 (a). The defendant executed the note, and a mortgage securing it, to finance his purchase of the plaintiff's house. After a trial on a case-stated basis, a Superior Court judge ruled that the UCC statute of limitations did not apply because the transaction was not "commercial" in nature, in that neither party was in the business of buying or selling houses or granting or obtaining secured loans. Instead, the judge ruled that the twenty-year statute of limitations for actions on promissory notes, G. L. c. 260, § 1, governed the plaintiff's claims, rendering them timely. Judgment then entered in the plaintiff's favor, from which the defendant appeals.

Regardless of how one might characterize the nature of the underlying transaction, we conclude that G. L. c. 106, § 3-118, applies to the plaintiff's claims because the note in question qualifies as a negotiable instrument as defined in the UCC. The claims, filed more than six years after the note became due, are therefore time-barred. We further conclude, however, that judgment properly entered for the plaintiff on her separate claim to recover damages under the mortgage, as the defendant has shown no error in the judge's applying judicial estoppel to preclude the defendant from challenging the enforceability of the mortgage. Thus, we affirm in part, reverse in part, and remand for entry of an amended judgment.

Background.  The facts are not in dispute.  In September 2007 the defendant purchased the plaintiff's house, located on County Street in Lakeville (property), and executed a promissory note to partially finance the purchase.  The note was payable to the plaintiff in the principal amount of $220,000 with five-percent annual interest.  It was secured by a first mortgage to the plaintiff on the property.

The note stated a maturity date of September 5, 2008, but contained a clause giving the defendant "the right to prepay" the amounts due under the note, and a clause providing that payment would "become due immediately" if any of eight specified "events of default" occurred.  The note also contained a clause requiring the defendant "to make principal payment of $20,000.00 within five (5) days of sale of [his] other property located" on Azalea Street in Lakeville.  In the event the defendant failed to make any payment when due, he "promise[d] to pay all costs of collection, including reasonable attorney's fees."

On January 5, 2009, after the defendant failed to make any payment on the note, the plaintiff sent him a letter stating that the note was overdue.  The defendant replied by letter that he could not afford to pay and offered to execute a new note financing the amount owed over a period of thirty years.  The plaintiff did not respond.

The parties did not exchange any further written correspondence until June 21, 2016.  On that date the defendant, through counsel, sent a letter to the plaintiff's counsel complaining of various problems with the property, noting that the property was in tax foreclosure proceedings, and offering "to pay [the plaintiff] $100,000, in full settlement of her mortgage, if and when [the defendant] finds a buyer."  Again, the plaintiff did not respond.

On July 1, 2016, about seven years and ten months after the due date of the note, the plaintiff filed the underlying action.  The complaint, as twice amended, asserted numerous claims, including for breach of contract based on nonpayment of the note (Count I), for recovery of attorney's fees under the note (Count X), and for damages under the mortgage (Count XI).  The defendant's answer asserted the statute of limitations as an affirmative defense.

The same day she filed the action, the plaintiff moved for a real estate attachment, averring that she "recently learned that the property is in tax title proceedings" and "also recently learned that [her] 2007 mortgage may be no longer valid, due to an intervening law change."[1]  In opposing the

---

[1] This was presumably in reference to Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253-257 (2015), which held that, where a mortgage does not expressly contain a term or maturity date, the term or maturity date of

motion, the defendant submitted a sworn affidavit in which he asserted that the plaintiff did not need an attachment because she had an existing mortgage:

> "As far as security for the Plaintiff's claim, she already has a $220,000.00 mortgage on the subject real estate. She states in her Affidavit that 'my 2007 mortgage may be no longer valid, due to an intervening law change.' I am unaware of any change in the law which would prevent her from foreclosing on this property, which is not owner-occupied, and for which there has never been an assignment of the mortgage" (ellipses omitted).

After a hearing on July 6, 2016, a judge (first judge) denied the plaintiff's motion.

About three months later, the defendant sold the property to a third party for $215,000. None of the proceeds were provided to the plaintiff. The defendant then moved, in July 2017, to dismiss all of the plaintiff's claims on grounds that they were barred by the respective statutes of limitations. At a hearing on the motion before a second judge, the defendant disclosed the fact of the third-party sale and testified that he learned within a few days of the July 6, 2016, hearing before

---

the underlying obligation -- if stated on the face of the mortgage -- serves as the term or maturity date of the mortgage for purposes of determining the limitations period under the obsolete mortgage statute, G. L. c. 260, § 33. Here, the mortgage references the underlying note and the defendant's "promise[] . . . to pay the debt in full not later than September 5, 2008." The term or maturity date of the mortgage was therefore September 5, 2008, and the limitations period under the obsolete mortgage statute expired five years from that date. See Deutsche Bank Nat'l Trust Co., supra at 252, 257-258.

the first judge that the mortgage was unenforceable under the obsolete mortgage statute, G. L. c. 260, § 33; he did not previously report this to the court, however. Based on this conduct, the second judge found that the defendant had "willfully misrepresented information concerning the [p]roperty's security interests when he opposed the real estate attachment" and that he was judicially estopped from challenging the enforceability of the mortgage as a result.

Eventually, the parties agreed to submit Counts I, X, and XI on a case-stated basis.[2] In the joint statement of facts, the defendant stipulated that he made no payment on the note. He argued, however, that the claims under the note were untimely under G. L. c. 106, § 3-118, and that the mortgage was discharged as a matter of law under the obsolete mortgage statute. Ruling in the plaintiff's favor on all three counts, the trial judge concluded that the claims under the note were governed not by G. L. c. 106, § 3-118, but by the twenty-year statute of limitations for "[a]ctions upon promissory notes signed in the presence of an attesting witness." G. L. c. 260, § 1. The judge further concluded that the plaintiff could recover damages separately under the mortgage, adopting the second judge's ruling that the defendant was judicially estopped

---

[2] The remaining claims are not at issue on appeal.

from contesting the enforceability of the mortgage.  Judgment then entered for the plaintiff in the amount of $550,500.81, which included $323,583.33 in damages and $27,927.15 in attorney's fees.

Discussion.  1.  Statute of limitations.  We review a decision issued on a case-stated basis de novo, "drawing our own inferences of fact and reaching our own conclusions of law." Hickey v. Pathways Ass'n, Inc., 472 Mass. 735, 743 (2015).  With respect to the claims under the note, the sole issue before us is whether the governing limitations period is six years under G. L. c. 106, § 3-118 (a),[3] or twenty years under G. L. c. 260, § 1.  It is uncontested that the claims would be untimely under the former, but timely under the latter.

We do not start on a blank slate in deciding this question. In Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 471 (2013), the Supreme Judicial Court examined G. L. c. 106, § 3-118 -- which is part of art. 3 of the UCC, the law of negotiable instruments -- and concluded that it "created a uniform statute

---

[3] Specifically, G. L. c. 106, § 3-118 (a), states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."  The remaining subsections of G. L. c. 106, § 3-118, not relevant here, set out the limitations periods applicable to actions on other types of negotiable instruments, such as checks.

of limitations for all actions arising under art. 3." As the court reasoned, the Legislature enacted G. L. c. 106, § 3-118, "to increase uniformity in the law of negotiable instruments across States, such that parties need not look beyond art. 3 to determine the applicable time frame within which to file suit." Id. Thus, in light of this "clearly stated" legislative purpose, the court held that G. L. c. 106, § 3-118, "takes the place of all other statutes of limitations that might otherwise apply to negotiable instruments." Id. at 472. The displaced statutes include "the general statute of limitations found in [G. L.] c. 260" (citation omitted). Id. at 471.

While the specific question presented in Premier Capital, LLC, was whether G. L. c. 106, § 3-118, governs actions on negotiable instruments executed under seal, the underlying rationale of the decision applies with equal force here. Because G. L. c. 106, § 3-118, "created a uniform statute of limitations for all actions arising under art. 3," Premier Capital, LLC, 464 Mass. at 471, it follows that the applicability of the statute to the plaintiff's claims depends on whether the note she is seeking to enforce is a negotiable instrument within the meaning of art. 3. We see no support in the statute for the plaintiff's contention that it is the nature of the underlying transaction -- i.e., whether it is "commercial" or "personal" -- that matters. Unlike other parts

of the UCC that expressly apply only to "merchants," see, e.g., G. L. c. 106, § 2-314 ("a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"),[4] art. 3 contains no such limitation.  To the contrary, as stated in the official comment to G. L. c. 106, § 3-104, "[t]he definition of 'negotiable instrument' defines the scope of Article 3 since Section 3-102 states:  'This Article applies to negotiable instruments.'"  See Premier Capital, LLC, supra at 471 n.6 ("UCC Official Comments do not have the force of law, but are nonetheless the most useful of several aids to interpretation and construction of the [UCC]" [quotation and citation omitted]).  Our conclusion is reinforced by the fact that art. 3 applies to checks, including personal checks, irrespective of the characteristics of the transaction or the parties to it.  See G. L. c. 106, §§ 3-104 (f), 3-118 (c) & official comment 3.

We thus turn to whether the note in question is a negotiable instrument under art. 3.  With immaterial exceptions, art. 3 defines "negotiable instrument" as:

---

[4] See also G. L. c. 106, § 2-104 ("merchant" is "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill").

"an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

G. L. c. 106, § 3-104 (a).  There is no dispute that the note here contains a promise to pay a fixed amount of money ($220,000), payable to order (of the plaintiff), at a definite time (September 5, 2008).  Nonetheless, the plaintiff asserts, with little discussion, that three other aspects of the note are conditions to the promise to pay, destroying the note's negotiability.  We take these in turn.

First, the plaintiff cites the provision that gives the defendant "the right to prepay" the amounts due under the note.  But the plaintiff points to nothing in art. 3 to support the premise that a borrower's reserving the right to prepay destroys the negotiability of a note.  Her claim that a right to prepay is a condition to the promise to pay is untethered to the text of the statute.  What constitutes an "unconditional" promise is

addressed in G. L. c. 106, § 3-106 (a), which provides that "a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing."[5]  The prepayment provision is contained within the note itself and is not an express condition to payment -- it is an option that the defendant may exercise, but it does not affect his promise to pay the fixed amount stated in the note.  See Official Comment 1 to G. L. c. 106, § 3-106 ("A statement of rights and obligations concerning collateral, prepayment, or acceleration does not prevent the note from being an instrument if the statement is in the note itself").  We also reject the suggestion, to the extent made, that a borrower's reservation of the right to prepay renders the time for payment indefinite.  As expressly provided in G. L. c. 106, § 3-108 (b), the time for payment can be "subject to" certain rights, including the right of "prepayment," without affecting whether the promise meets the definition of "payable at a definite time."

---

[5] Section 3-106 goes on to state that "[a] reference to another writing does not of itself make the promise or order conditional" and that "[a] promise or order is not made conditional . . . by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration."

Second, the plaintiff cites the requirement that the defendant "pay all costs of collection, including reasonable attorney's fees." But she fails to mention or address that the definition of "negotiable instrument" allows for the "fixed amount of money" to include "interest or other charges described in the promise or order." G. L. c. 106, § 3-104 (a). Courts in other jurisdictions have held that "other charges" encompasses collection costs. See Jenkins v. Karlton, 329 Md. 510, 524 (1993) (provision for "collection fees, including reasonable attorneys' fees" does not "destroy[] a note's negotiability"); Roy v. Mugford, 161 Vt. 501, 514 (1994) ("We have enforced contractual provisions in negotiable instruments making the debtor responsible for collection costs, including attorney's fees . . ."). The plaintiff has waived any argument to the contrary, as she did not raise the issue in her trial memorandum (or in her appellate brief). Furthermore, we disagree with her assertion that the provision for collection costs "is clearly a condition to the promise to pay," as the defendant's promise to pay is not contingent on whether he might also have to pay the collection costs. Cf. Official Comment 1 to G. L. c. 106, § 3-106 (a) (example of express condition to payment would be: "I promise to pay $100,000 to the order of John Doe if he conveys title to Blackacre to me").

Third, the plaintiff cites the provision that payment would "become due immediately" upon the occurrence of one of the eight specified "events of default." We agree with the defendant, however, that this is an acceleration clause, which does not make the promise to pay conditional. See Official Comment 1 to G. L. c. 106, § 3-106 ("A statement of rights and obligations concerning collateral, prepayment, or acceleration does not prevent the note from being an instrument if the statement is in the note itself"). Also, that the note gives the plaintiff the right to accelerate payment does not make the time for payment indefinite. As mentioned, under G. L. c. 106, § 3-108 (b), the time for payment can be "subject to" certain rights; these include the right of "acceleration."[6]

We therefore conclude that the note is a negotiable instrument under art. 3 and that the claims under it, Counts I and X, are subject to the six-year statute of limitations found in G. L. c. 106, § 3-118 (a). Because the plaintiff filed the claims more than six years after the due date of the note, they are untimely and should have been dismissed.

---

[6] The plaintiff makes no separate argument with regard to the clause requiring the defendant to make partial payment of the principal within five days of sale of his Azalea Street property. Although the trial judge concluded that this was a condition that rendered the note nonnegotiable, that conclusion cannot be squared with G. L. c. 106, § 3-106, as the partial-payment clause is not "an express condition to payment," nor is it subject to or governed by another writing.

2.  Judicial estoppel.  The expiration of the limitations period for enforcing the note does not, however, preclude the plaintiff from enforcing the mortgage.  "[A]t both law and equity, the inability to recover directly on a note due to the expiration of a statute of limitations is no bar to recovery under a mortgage, so long as the underlying debt remains unpaid" (citation omitted).  Thornton v. Thornton, 97 Mass. App. Ct. 694, 695 (2020).  Although the defendant claims in a footnote in his brief that the mortgage is unenforceable under the obsolete mortgage statute, G. L. c. 260, § 33, he does not argue that the trial judge erred in finding that he was judicially estopped from raising such a claim.  He has thus waived any challenge to that finding.  See Nelson v. Salem State College, 446 Mass. 525, 527 n.2 (2006).

Even absent waiver, we would be unable to conclude on this record that the trial judge abused his discretion in invoking judicial estoppel.  See Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640 (2005) ("Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion").  Judicial estoppel has two fundamental elements. First, the position being asserted must be "directly contrary to" a position previously asserted.  Id. at 641.  This element is met because, in opposing the plaintiff's motion for a real estate attachment, the defendant asserted that the plaintiff did

not need an attachment because she could foreclose on the mortgage -- a position directly contrary to his current position that the mortgage was discharged by operation of the obsolete mortgage statute.  Second, the party being estopped "must have succeeded in convincing the court to accept its prior position." Id.  The defendant succeeded in persuading the first judge to deny the plaintiff's motion for the attachment; and as the record appendix contains no hearing transcript or written order on that motion, we have no basis on which to conclude that the defendant's representation regarding the enforceability of the mortgage did not factor into the first judge's decision.  In turn, we have no basis to disturb the judgment entered for the plaintiff on her claim under the mortgage, Count XI, entitling her to recover the amounts owed under the note.[7]

Conclusion.  So much of the judgment as entered for the plaintiff on Counts I and X is reversed.  The remainder of the judgment is affirmed, and the matter is remanded for entry of an amended judgment.

---

[7] As the trial judge observed in his decision, the plaintiff did "not seek to foreclose and recover title to the [p]roperty" but sought "only damages for non-payment of the [n]ote."  The defendant does not contest that these damages were recoverable under the mortgage and has thus waived any claim to the contrary.  We note also that the mortgage has a provision stating:  "If all or any part of the Property or any Interest in the Property is sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument."

<u>So ordered</u>.